GEORGE A. HELME, Respondent, *v.* MARY E. BUCKELEW, as Executrix of FREDERICK L. BUCKELEW, Deceased, Appellant.

Executors and administrators — service of process — Code Civil Procedure, section 1836a, as amd. L. 1911, ch. 631 — when foreign executrix temporarily within this state who never has had property of her testator in the state, cannot be sued here — the statute (Code Civ. Pro. § 1836a, as amd.) permits foreign administrators and executors to bring actions in this state in certain cases but does not permit them to be sued here.

1. Under the Code of Civil Procedure (§ 1836-a, as amd. L. 1911, ch. 631) a foreign administrator or executor may sue in the courts of this state, but the statute cannot be construed to authorize the maintenance of actions at law to be followed by the ordinary judgment *in personam* against foreign representatives of a decedent, whether there are assets in this state at the end of the litigation or even at the beginning. The statute removes disabilities, but does not terminate immunities. Foreign administrators and executors may *sue* in the same manner as non-residents, for comity may enlarge the measure of their rights as plaintiffs without encroaching upon the jurisdiction of other courts, or overstepping the limits of our own. Foreign administrators and executors may be sued in the same manner as non-residents but only when the subject-matter subjects them to the jurisdiction; for comity, though it may enlarge their rights, cannot, unless it is also the comity of the domicile, enlarge their liabilities, and there is nothing in the statute that unmistakably reveals a purpose to assume, in disregard of comity, a jurisdiction which the accepted principles and usages prevailing between different sovereignties have heretofore condemned.

2. A foreign executrix served with a summons, while temporarily within the state, is entitled to an order vacating such service when she shows without contradiction that she is herself a resident of the District of Columbia; that her testator was a resident of New Jersey, where his will was admitted to probate and where letters testamentary were issued; that no property of any kind belonging to the testator is now or ever was in the state of New York; and that, after due notice to all creditors, the estate has been distributed in New Jersey in conformity with law.

*Helme* v. *Buckelew*, 191 App. Div. 59, reversed.

(Argued June 1, 1920; decided July 7, 1920.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 5, 1920, which affirmed an order of Special Term denying a motion to set aside service of the summons in the above-entitled action.

The following question was certified: " Did the court acquire jurisdiction, under section 1836a of the Code of Civil Procedure, over the defendant as executrix and of the cause of action herein by personal service of the summons within this state upon said defendant? "

*Martin Conboy* and *Henry T. Hall* for appellant. Section 1836a should not be construed to allow an action to be begun against a foreign executor by service of summons upon him within the state, when there are no assets belonging to the estate within the state, and the executor has done nothing to submit himself to this jurisdiction. (*Johnson* v. *Wallis*, 112 N. Y. 230; *Hopper* v. *Hopper*, 125 N. Y. 400; *Reynolds* v. *Stockton*, 140 U. S. 254; *Vaughn* v. *Northrup*, 15 Pet. 1; *Hill* v. *Tucker*, 54 U. S. 458; *Provost* v. *I. G. S. C. Co.*, 152 App. Div. 83.) Any construction of section 1836a permitting compulsory service of process upon a foreign executor, when there are not and never have been any assets of the estate within the jurisdiction, is violative of the due process clause of the Constitution of the United States and any judgment based upon such process would not be entitled to full faith and credit thereunder. (*Pennoyer* v. *Neff*, 95 U. S. 714; *Goldey* v. *Morning News*, 156 U. S. 518; *Riverside Mills* v. *Menefee*, 237 U. S. 189; *Tilt* v. *Kelsey*, 207 U. S. 43; *Bostwick* v. *Carr*, 165 App. Div. 55; *Holmes* v. *Camp*, 219 N. Y. 359; *Thorburn* v. *Gates*, 225 Fed. Rep. 613.)

*J. Ard Haughwout* and *Everett J. Esselstyn* for respondent. The personal service of a summons on a foreign executor while sojourning in this state is good. (*Thorburn* v. *Gates*, 185 App. Div. 443; *Holmes* v. *Camp*, 219 N. Y. 359.)

1920.]                  Opinion, per CARDOZO, J.                  [229 N. Y.]

CARDOZO, J.   A foreign executrix served with a summons while temporarily within the state contests the jurisdiction of the.court to go forward with the suit to judgment.  On motion to vacate the service, she shows that she is herself a resident of the District of Columbia; that her testator was a resident of New Jersey, where his will was admitted to probate and where letters testamentary were issued; that no property of any kind belonging to the testator is now or ever was in the state of New York; and that after due notice to all creditors, the estate has been distributed in New Jersey in conformity with law.  None of these averments is controverted by the plaintiff.  The question is whether, in such circumstances, section 1836a of the Code, of Civil Procedure (L. 1911, ch. 631) subjects the executrix to suit.  The section reads as follows:  " An executor or administrator duly appointed in any other state, territory or district of the United States or in any foreign country may sue or be sued in any court in this state in his capacity of executor or administrator in like manner and under like restrictions as a nonresident may sue or be sued, if, within twenty days after any such executor or administrator shall commence, or appear in, any action or proceeding in any court in this state or within twenty days after he shall be required or directed by summons or otherwise to appear therein, there shall be filed in the office of the clerk of the court, in which such action or proceeding shall be brought or be pending, a copy of the letters testamentary or letters of administration issued to such executor or administrator duly authenticated as prescribed by section 2704 of the Code of Civil Procedure; in default whereof all proceedings in such action or proceeding may be stayed until such duly authenticated copy of such letters shall be so filed."

Until the adoption of that section in 1911, the general rule was that a foreign administrator or executor could neither sue nor be sued in the courts of this state (*Hopper*

v. *Hopper*, 125 N. Y. 400, 403; *Morrell* v. *Dickey*, 1 Johns. Ch. 153; *Doolittle* v. *Lewis*, 7 id. 45; Dicey, Conflict of Laws [2d ed.], p. 451). The disability to sue might be removed by force of comity. Not so easy was it to terminate the immunity from suit (*Vaughan* v. *Northup*, 15 Pet. 1, 5). A distinction was then drawn between administrators and executors. The distinction had its origin in the source of title. With administrators, the source of title is the grant of letters of administration; with executors, the will (14 Halsbury, Laws of England, Executors and Administrators, secs. 263, 270). "The executor's interest in the testator's estate is what the testator gives him. That of an administrator is only that which the law of his appointment enjoins." (*Hill* v. *Tucker*, 13 How. [U. S.] 458, 466). A foreign administrator was viewed, therefore, as the agent of a foreign sovereignty. The nature of his office made him accountable in the courts of the domicile, and not elsewhere (*Vaughan* v. *Northup*, 15 Pet. 1). Another sovereignty, if it found him within its territorial limits, might render a judgment that would be effective in the disposition of local assets. It could not render a judgment generally, *in personam*, which the courts of the domicile would be under a duty to respect (*Johnson* v. *Powers*, 139 U. S. 156, 159; *Low* v. *Bartlett*, 8 Allen, 259; *Goodwin* v. *Jones*, 3 Mass. 514; *McLean* v. *Meek*, 18 How. [U. S.] 16; *Stacy* v. *Thrasher*, 6 How. [U. S.] 44). Even though the same man was the administrator in two jurisdictions, the judgment rendered against him in one was no evidence in the other (*Aspden* v. *Nixon*, 4 How. [U. S.] 467; *Johnson* v. *Powers, supra*). Foreign receivers, unless they were also statutory assignees, were subject to like rules (*Reynolds* v. *Stockton*, 140 U. S. 254, 272; *Converse* v. *Hamilton*, 224 U. S. 243, 259). Executors, however, were held to occupy a position which had some elements of difference. Like administrators, they were not subject to suit in another jurisdiction until letters were granted to them. Apparently the reason for this was that the courts of

another jurisdiction were not *bound* to recognize their authority. If, however, their authority *was* recognized, as where they took ·out ancillary letters, a judgment obtained in one jurisdiction was not void of all effect when put in evidence in another. If the same person was executor in two states, a judgment rendered against him in the courts of the domicile, *i. e.*, of primary administration, was conclusive in the courts whose administration was ancillary or secondary (*Carpenter* v. *Strange*, 141 U. S. 87, 104; *Owsley* v. *Central Trust Co.*, 196 Fed. Rep. 412, 418). Even if the persons were not the same, there were times and purposes for which the judgment had a limited effect (*Hill* v. *Tucker*, 13 How. [U. S.] 458, 466; *Hopper* v. *Hopper*, 53 Hun, 394, 397; 125 N. Y. 400). Executors unlike administrators stood in privity with each other (*Hill* v. *Tucker, supra*).

These were the general rules as they stood before the statute. They were not, however, without exceptions. According to some decisions, an executor or administrator might submit to the jurisdiction of the foreign courts, and the judgment would then bind him everywhere (*Lawrence* v. *Nelson*, 143 U. S. 215, 222; *Chicago Life Ins. Co.* v. *Cherry,* 244 U. S. 25, 29; *Newark Savings Inst.* v. *Jones*, 35 N. J. Eq. 406; *Babbitt* v. *Fidelity Trust Co.*, 70 id. 655. Cf., however, *Flandrow* v. *Hammond*, 13 App. Div. 325). But even without waiver of immunity, a court of equity took jurisdiction at times over foreign representatives when it was necessary to intervene for the administration of local assets (*Field* v. *Gibson*, 20 Hun, 274, 276; *Lockwood* v. *Brantly*, 31 Hun, 155, 157; *McNamara* v. *Dwyer*, 7 Paige, ·239; *Brown* v. *Brown*, 4 Edw. Ch. 355; *DeCoppet* v. *Cone*, 199 N. Y. 56, 61; *Bergmann* v. *Lord*, 194 N. Y. 70. Cf. Dicey, *supra*). That jurisdiction was exceptional, and was kept within narrow bounds.. It was not extended to actions at law, at least since the statutes abolishing the office of an executor *de son tort* (*Brown* v. *Brown, supra*, distinguishing *Camp-*

*bell* v. *Tousey,* 7 Cow. 64.    See, also, *Field* v. *Gibson, supra; DeCoppet* v. *Cone, supra; Holmes* v. *Camp,* 219 N. Y. 359, 372).    It was limited to cases where a failure of justice would follow if equity withheld relief.    Either the foreign representative by a *devastavit* or other tort had put himself in the position of an individual wrongdoer (Dicey, *supra*), or there was a *res* within the jurisdiction to be disposed of or preserved (*Holmes* v. *Camp, supra*).

The plaintiff says that this amendment of the Code, in a single sentence of sweeping, if indeterminate, application, has uprooted these established principles which have long regulated the conflict of jurisdiction between courts of different sovereignties.

I have little doubt that it was part of the purpose of the statute to remove the disability which formerly attached to foreign executors and administrators when suing in our courts as plaintiffs.    I shall assume, even though it may be unnecessary to decide, that the purpose was to this extent effective.    The removal of a disability, as distinguished from an immunity, comes properly within the field of comity (*Vaughan* v. *Northup, supra*).    It is when we pass to that part of the statute which deals with the liability of foreign representatives as defendants that difficulties begin.

If the purpose of the statute was to permit the recovery of a judgment which irrespective of the consent of the jurisdiction of the domicile or of the presence of assets within this jurisdiction, would bind foreign administrators and executors everywhere as a judgment *in personam,* the statute registers a futile effort.    In the language of LEARNED HAND, J., in *Thorburn* v. *Gates* (225 Fed. Rep. 613), it " would necessarily be *brutum fulmen* in its result, and unconstitutional in its inception."    That this is so in its application to administrators, I think is hardly doubtful.    " The administrator is exclusively bound to account for all the assets which he receives under and in virtue of his administration to the proper

tribunals of the government from which he derives his authority; and the tribunals of other states have no right to interfere with or to control the application of those assets, according to the *lex loci* " (STORY, J., in *Vaughan* v. *Northup*, 15 Pet. 1, 5). The man who is the foreign administrator we may make our own administrator if we please, when the nature of the estate involves the need of administration here. In making him our own, we do not change the source of his primary appointment or his duty and relation to the power which appointed him. The situation is not so clear when there is occasion to apply the statute to executors. The only effect of probate in their case is to authenticate an existing title (*Hill* v. *Tucker, supra; Carpenter* v. *Strange, supra*). If this state is satisfied to accept the authentication of title by another state, and to give it the same effect as if new letters were issued here, I will not say that it may not do so. I am satisfied that it may when it gives effect to the foreign letters in the administration of the local assets. A different question arises, however, when a jurisdiction which has neither the domicile of the testator nor the presence of assets to bring the estate within its grasp, attempts to impose its decree upon the jurisdiction which has possession of the *res* (*Tilt* v. *Kelsey*, 207 U. S. 43; *Matter of Horton*, 217 N. Y. 363, 371; Code Civ. Pro. sec. 2515). For many purposes, the executor and the individual who happens to be executor are in law distinct persons (*Collins* v. *Hydorn*, 135 N. Y. 320). We are not referred to any precedent in any court of final review which upholds our right to say that the foreign executor as executor is present in New York when neither domicile nor possession gives to the *res* to be administered a situs in New York. Some analogies of the law point, though not unmistakably, to the negation of such a right (*Tilt* v. *Kelsey, supra; Goldey* v. *Morning News*, 156 U. S. 518; *Riverside & D. River C. Mills* v. *Menefee*, 237 U. S. 189; *Bagdon* v. *Phila. & Reading C. & I. Co.*, 217

24

N. Y. 432, 438; *Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259; *Dollar Co.* v. *Canadian Car & Foundry Co.*, 220 N. Y. 270; *Security Ins. Co.* v. *Taylor*, 2 Biss. 446; S. C. Fed. Cas. No. 12607). Others suggest its recognition (*Toronto Gen. Tr. Co.* v. *Chicago, B. & Q. R. R. Co.*, 123 N. Y. 37; *Owsley* v. *Central Trust Co.*, *supra*). The precise limits of legislative power in such conditions are not easily defined. We should postpone the attempt to mark them till the necessity arises. I leave the question open whether the statute so construed, even though invalid against administrators, might be sustained against executors. Nice questions of the limits of constructive severance of the good and bad would present fresh difficulties to be surmounted before reaching that conclusion, if it were otherwise permissible (*U. S.* v. *Ju Toy*, 198 U. S. 253, 262; *Hatch* v. *Reardon*, 204 U. S. 152, 160; *Butts* v. *Merchants & M. Transp. Co.*, 230 U. S. 126; *Employers' Liability Cases*, 207 U. S. 463; *Fougera & Co.* v. *City of N. Y.*, 224 N. Y. 269, 282; *Dollar Co.* v. *Canadian C. & F. Co.*, *supra*). We should avoid a construction that will invalidate the statute in any part, and even one that will have the effect of putting its validity in doubt (*Matter of International Ry. Co.* v. *P. S. Comm.*, 226 N. Y. 474, 482). The statute draws no distinction between executors and administrators. We are to seek the construction that will preserve it as to both. Especially are we to do this if we shall thereby bring one enactment into harmony with others, and give coherence and unity to the legislative scheme.

Viewing this section of the Code in the setting of kindred legislation, of constitutional limitations, and of international practice, I am unwilling to impute to its framers the intent to authorize a judgment against foreign representatives regardless of the domicile of the decedent or the situs of the estate. I think the assumption underlies the statute that the foreign representatives are here in an official or representative capacity (*Dollar Co.*

v. *Canadian C. & F. Co., supra*); that assets within the state make administration by some one a necessity; that jurisdiction, when exercised, will involve the disposition of some *res* within the power of the court (*Holmes* v. *Camp, supra; Pennoyer* v. *Neff*, 95 U. S. 714); and hence that the effect is little more than a legislative declaration of the.existing rule in equity. The argument is pressed that the *res* need not be here at the inception of the suit; if there is nothing here to-day, there may be something here to-morrow; an action at law will lie, it is said, to procure a judgment enforcible against any property that may be discovered in the future. This was not so before the statute (*Brown* v. *Brown; Field* v. *Gibson, supra*), nor do I think it is so now. Such a construction would leave outstanding, as a difficulty still to be overcome, the point of constitutional power. If possession of the *res* is the foundation of jurisdiction, that possession must be acquired when jurisdiction is assumed (*Riverside & D. River C. Mills* v. *Menefee, supra; Bryan* v. *University Pub. Co.*, 112 N. Y. 382; *Paget* v. *Stevens*, 143 N. Y. 172; *Holmes* v. *Dell*, 139 App. Div. 455, 461; *Chesley* v. *Morton*, 9 App. Div. 461). But I do not dwell upon the point of power, for if all its doubts and difficulties were dispelled, there would remain the point of purpose. The plaintiff's construction of the statute involves the scheme of legislation in a tangle of contradictions. I am persuaded that the legislature did not contemplate the maintenance of actions at law to be followed by the ordinary judgment *in personam* against foreign representatives, whether there were assets in the state at the end of the litigation or even at the beginning. If such actions are authorized, I do not know how we. are to enforce the judgments. Surely the plaintiff is not expected to sell the property upon execution, and appropriate it to the use of himself and no one else. That would conflict with the scheme of the statute regulating suits against ancillary executors and administrators (Code Civ. Pro. sec. 2635), and with

the whole theory and framework of legislation in respect of the distribution of estates (Code Civ. Pro. secs. 1824, 1825). The general duty of ancillary representatives is *to transmit* the assets to the domicile (Code Civ. Pro. sec. 2634), and the utmost the surrogate may do is to direct that a *pro rata* share be retained for local creditors (Code Civ. Pro. sec. 2635; *Bostwick* v. *Carr*, 165 App. Div. 55). It is incredible that we should have two repugnant schemes in the same code of practice, one permitting a creditor to appropriate the entire fund by suing the foreign representative, and the other restricting him, when he sues the ancillary representative, to a ratable division. If such inconsistencies are possible, we ought to exact clear and definite language before holding that they were intended. On the other hand, if no execution is to be permitted, we have at the utmost a mere declaratory judgment. Much may be said in favor of introducing the declaratory judgment into our law of procedure (Borchard, The Declaratory Judgment, 28 Yale L. J. 1, 105). I think, however, we may assume that the lawmakers, if they had intended to introduce such a reform by the enactment of section 1836a of the Code, would have revealed their purpose more distinctly. They would have used language similar to that of the new Practice Act, which establishes a new remedy for the future (§ 473, ch. 925, Laws of 1920, adopted May 21, 1920, to take effect April 15, 1921). They would not have begun by authorizing a declaratory judgment which would not settle anything by its declaration, since it would be of no force in the only jurisdiction where there is an estate to be administered.

I think the true view must, therefore, be that the statute removes disabilities, but does not terminate immunities. These are what they always were. Foreign administrators and executors may *sue* in the same manner as non-residents, for comity may enlarge the measure of their rights as plaintiffs without encroaching upon the

jurisdiction of other courts, or overstepping the limits of our own. Foreign administrators and executors may be *sued* in the same manner as non-residents, but only when the subject-matter subjects them to the jurisdiction, for comity, though it may enlarge their rights, cannot, unless it is also the comity of the domicile, enlarge their liabilities, and there is nothing in the statute that unmistakably reveals a purpose to assume, in disregard of comity, a jurisdiction which the accepted principles and usages prevailing between different sovereignties have heretofore condemned. The statute, therefore, in so far as it touches the liabilities of defendants is effective within a narrow field. The rule which prevailed in equity has gained legislative sanction. It has also been regulated in respect of matters of procedure. A stay of proceedings may be obtained if a copy of the foreign letters is not filed within the time prescribed. Moreover, the foreign representatives, if sued, are put in the same class as non-residents, with consequent privileges and burdens which we need not now define. To go farther, and hold them subject generally to actions *in personam*, would involve us not only in problems of constitutional power and complications of international usage, but in a cumbrous and inconsistent and unworkable procedure which would disorganize the scheme disclosed in other statutes, and there carefully developed, for the administration of estates. This isolated section which develops no scheme of its own, and which seems to take for granted a scheme into which it fits, did not obliterate the historic landmarks, and leave the fields without a monument.

The order of the Appellate Division and that of the Special Term should be reversed, with costs in all courts, the motion granted with ten dollars costs, and the question certified answered in the negative.

HISCOCK, Ch. J., POUND, CRANE and ANDREWS, JJ., concur; COLLIN, J., concurs in result; CHASE, J., not voting.

Order reversed, etc.