GEORGE TRACY ROGERS and Others, Suing on Behalf of Themselves and All Other Stockholders Similarly Situated, Respondents, *v.* GEORGE J. GOULD and Others, Defendants, Impleaded with KINGDON GOULD and Another, as Executors, etc., of GEORGE J. GOULD, Deceased, Appellants.

First Department, July 2, 1924.

Executors and administrators — action by minority stockholders against persons who had been directors and others based on fraud and conspiracy to wreck corporation is in personam and not in rem — foreign executors of testator cannot be brought in as parties defendant against their will — Decedent Estate Law, § 160, does not remove immunities of foreign executors — foreign executors did not submit to jurisdiction by appearing specially on order to show cause why action should not be continued against them — remedy is by way of ancillary letters.

An action by minority stockholders against several defendants, some of whom were at various times directors of the corporation and others who had never been directors, for an accounting and restitution of all moneys, properties and funds of the corporation of which it had been wrongfully divested, which action is founded upon an alleged wrongful and fraudulent combination and conspiracy to wreck the corporation for the benefit of the defendants, is an action *in personam* and not *in rem*, based on the theory of a common tort in which all the individual defendants participated.

The foreign executors of one of the defendants who himself resided in the State of New Jersey, and who died after the action was commenced, cannot be brought in as parties defendant and the action continued against them against their will, for while section 160 of the Decedent Estate Law removes disabilities in favor of a foreign executor or administrator, it does not remove the immunity from suit.

The foreign executors of the defendant did not submit themselves to the jurisdiction of the courts of this State by appearing specially on the order to show cause why the action should not be continued against them.

The plaintiffs must seek their remedy under the Surrogate's Court Act by way of ancillary letters.

APPEAL by the defendants, Kingdon Gould and another, as executors, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 6th day of March, 1924, granting plaintiffs' motion to continue an action against foreign executors, to amend the summons and pleadings so as to make them parties defendant, without prejudice to proceedings already had, and for leave to serve a supplemental complaint, and denying said defendant's motion to vacate an order to show cause and the service thereof.

First Department, July, 1924.                    [Vol. 210

*Taylor, Knowles & Hack* and *Gillespie & O'Connor* [*R. B. Knowles* of counsel], for the appellants appearing specially.

*Maurice B. & Daniel W. Blumenthal* and *Arthur M. Wickwire* [*Almet F. Jenks* of counsel; *Gustavus A. Rogers* with him on the brief], for the respondents.

DOWLING, J.:

This action was brought by the plaintiffs, as minority stockholders of the Denver and Rio Grande Railroad Company, against the individual defendants, some of whom were at various times directors of the company, for an accounting and restitution of all of the moneys, properties and funds of the company of which it has been wrongfully and unlawfully disseized and divested, and for all loss and damages which the company and its stockholders have sustained in the premises, aggregating $20,000,000. It is founded upon an alleged unlawful, wrongful and fraudulent combination and conspiracy of the individual defendants for the purpose of wrecking the Denver and Rio Grande railroad and causing all of its properties to be wiped out, the entire investment of its stockholders therein to be destroyed, and all of its properties to be absorbed by other interests, including the defendants. It is further alleged that continuously from February, 1915, the conspirators were knowingly and willfully engaged in said unlawful combination and conspiracy and in the furtherance of such unlawful objects and purposes. The agreed manner of accomplishment of the conspiracy is then set forth in seven different subdivisions, as well as the way in which the conspiracy was actually effectuated, the latter being set forth in great detail.

The action grounds in tort, and is not based merely on a neglect or failure of the directors of the company to perform their duties, or their performance in an improper or dishonest manner, but on an unlawful conspiracy with well-defined purposes, having in view the ruin of the company, entered into not only by the defendants, who were directors of the company, but as well by the defendants Krech and Baldwin, who are charged to have been two of the conspirators and to have aided and abetted the others in the performance of their unlawful acts. Krech was president of the Equitable Trust Company of New York, the trustee of a first mortgage on the Western Pacific Railroad Company (constituting with the Denver and Rio Grande and the Missouri Pacific, the so-called " Gould System "), and afterwards became president of the Western Pacific Railroad Corporation, a holding company. Baldwin was a director of the Western Pacific Railroad Company. Neither Krech nor Baldwin was ever a director of the Denver and

Rio Grande railroad, so far as the complaint discloses. The action is clearly one *in personam* and not *in rem*, based on the theory of a common tort in which all the individual defendants participated.

The action was commenced against George J. Gould in his lifetime by the service of a summons and complaint upon his attorneys, who served a notice of appearance on his behalf, and he interposed a verified answer on March 8, 1922.

George J. Gould died May 16, 1923, a resident of the State of New Jersey, leaving a last will and testament which was admitted to probate in New Jersey; and Kingdon Gould and Schuyler Neilson Rice, both residents of New Jersey, qualified and are acting as executors under said will and under the laws of the State of New Jersey.

The plaintiffs in this action applied for and obtained an order directing the executors of the estate of George J. Gould to show cause why an order should not be granted herein directing the above-entitled action to be continued against them in the place of the said deceased defendant, without prejudice to the proceedings already had, and granting leave to plaintiffs to file and serve a supplemental summons and complaint. The order to show cause further directed substituted service upon the foreign and non-resident executors. Said executors, appearing specially and solely for the purposes of the motion, then made a cross-motion for an order vacating the order to show cause and to vacate and set aside the service thereof, on the ground " that this court has no jurisdiction over Schuyler Neilson Rice and Kingdon Gould or either of them, as such executors of the estate of George J. Gould, deceased, and has no jurisdiction over any assets of the estate of said deceased."

The court at Special Term granted plaintiffs' motion and made an order continuing the action against the executors of the estate of George J. Gould, deceased, and amending the summons and pleadings so as to make them parties defendant in the action, without prejudice to the proceedings already had herein; and further granting leave to plaintiffs to serve a supplemental complaint and directing that a supplemental summons issue to such executors. Said order further denied the cross-motion of said executors for an order vacating the order to show cause and the service thereof.

From such order the foreign executors have taken the present appeal to this court.

I believe that the executors are correct in their contention that the Supreme Court of this State had no jurisdiction over them.

The record discloses that at the time of the commencement of this action and continuously thereafter and until his death George J. Gould was a resident of New Jersey. His will was admitted to probate in the Orphans' Court of Ocean county, N. J., and letters testamentary were issued out of said court to Kingdon Gould and S. N. Rice, who qualified and are now acting as executors. Not only was the deceased a resident of New Jersey, but both the executors are residents of New Jersey; Kingdon Gould residing at Lakewood, N. J., and S. N. Rice residing at New Brunswick, N. J. These executors receive their executorial powers under the laws of the State of New Jersey. They are called upon to administer, and must administer, this estate according to the New Jersey laws. Their conduct in the administration of this estate will be measured and weighed by the laws of New Jersey, and not by the laws of New York. They are not administering the estate in this State and are not claimed to have taken possession of any of the assets of the estate therein. As was said in *People* v. *Baker* (76 N. Y. 84): "We must and do concede, that a State may adjudge the status of its citizen towards a non-resident; and may authorize to that end such judicial proceedings as it sees fit; and that other States must acquiesce, so long as the operation of the judgment is kept within its own confines. But that judgment cannot push its effect over the borders of another State, to the subversion of its laws and the defeat of its policy; nor seek across its bounds the person of one of its citizens, and fix upon him a status, against his will and without his consent, and in hostility to the laws of the sovereignty of his allegiance."

The court has no power to bring the foreign executors into this suit as parties defendant against their will. A foreign executor was defined in *Hopper* v. *Hopper* (125 N. Y. 400, 402): "By the phrase 'foreign executor' the courts never mean the mere non-residence of the individual holding the office, but the foreign origin of the representative character. That is the sole product of the foreign law, and, depending upon it for existence, cannot pass beyond the jurisdiction of its origin. The individual may come here and acquire rights or incur liabilities which our tribunals will defend or enforce, but he can have no representative rights or liabilities since we recognize in him no representative character. The foreign executor may make a contract here which our courts will compel him to perform because it is his contract, but where it is the testator's only he cannot sue or be sued upon it, since the right or the liability is purely representative and exists only by force of the official character, and so, cannot pass beyond the jurisdiction which gave it. (*Johnson* v. *Wallis*, 112 N. Y. 230.)"

The statutory provision as to suits by or against foreign executors or administrators is section 160 of the Decedent Estate Law (being section 1836-a of the Code of Civil Procedure, without substantial change, added to the Decedent Estate Law by section 1 of chapter 919 of the Laws of 1920). It reads as follows: " Foreign executor or administrator may sue or be sued. An executor or administrator duly appointed in any other State, Territory or District of the United States or in any foreign country may sue or be sued in any court in this State in his capacity of executor or administrator in like manner and under like restrictions as a nonresident may sue or be sued, if within twenty days after any such executor or administrator shall commence, or appear in, any action or proceeding in any court in this State or within twenty days after he shall be required or directed by summons or otherwise to appear therein, there shall be filed in the office of the clerk of the court in which such action or proceeding shall be brought or be pending a copy of the letters testamentary or letters of administration issued to such executor or administrator duly authenticated as prescribed by section forty-five of this chapter; in default whereof all proceedings in such action or proceeding may be stayed until such duly authenticated copy of such letters shall be so filed."

In *Helme* v. *Buckelew* (229 N. Y. 363, 371), Judge Cardozo said, in reference to the then section 1836-a of the Code of Civil Procedure: " I am persuaded that the Legislature did not contemplate the maintenance of actions at law to be followed by the ordinary judgment *in personam* against foreign representatives, whether there were assets in the State at the end of the litigation or even at the beginning. If such actions are authorized, I do not know how we are to enforce the judgments. Surely the plaintiff is not expected to sell the property upon execution, and appropriate it to the use of himself and no one else. That would conflict with the scheme of the statute regulating suits against ancillary executors and administrators (Code Civ. Pro. sec. 2635)* and with the whole theory and framework of legislation in respect of the distribution of estates (Code Civ. Pro. secs. 1824, 1825).† The general duty of ancillary representatives is to transmit the assets to the domicile (Code Civ. Pro. sec. 2634),* and the utmost the surrogate may do is to direct that a *pro rata* share be retained for local creditors (Code Civ. Pro. sec. 2635; *Bostwick* v. *Carr*, 165 App. Div. 55). It is incredible that we should have two repugnant

---

* Now Surrogate's Court Act, §§ 165, 164.— [Rep.

† Now Decedent Estate Law, §§ 150, 151, as added by Laws of 1920, chap. 919.— [Rep.

schemes in the same code of practice, one permitting a creditor to appropriate the entire fund by suing the foreign representative, and the other restricting him, when he sues the ancillary representative, to a ratable division. If such inconsistencies are possible, we ought to exact clear and definite language before holding that they were intended. On the other hand, if no execution is to be permitted, we have at the utmost a mere declaratory judgment. * * *

" I think the true view must, therefore, be that the statute removes disabilities, but does not terminate immunities. These are what they always were. * * * Foreign administrators and executors may be sued in the same manner as non-residents, but only when the subject-matter subjects them to the jurisdiction, for comity, though it may enlarge their rights, cannot, unless it is also the comity of the domicile, enlarge their liabilities, and there is nothing in the statute that unmistakably reveals a purpose to assume, in disregard of comity, a jurisdiction which the accepted principles and usages prevailing between different sovereignties have heretofore condemned. The statute, therefore, in so far as it touches the liabilities of defendants is effective within a narrow field. The rule which prevailed in equity has gained legislative sanction. It has also been regulated in respect of matters of procedure. A stay of proceedings may be obtained if a copy of the foreign letters is not filed within the time prescribed. Moreover, the foreign representatives, if sued, are put in the same class as non-residents, with consequent privileges and burdens which we need not now define. To go farther, and hold them [foreign representatives] subject generally to actions *in personam*, would involve us not only in problems of constitutional power and complications of international usage, but in a cumbrous and inconsistent and unworkable procedure which would disorganize the scheme disclosed in other statutes, and there carefully developed, for the administration of estates. This isolated section which develops no scheme of its own, and which seems to take for granted a scheme into which it fits, did not obliterate the historic landmarks, and leave the fields without a monument."

The same question was before this court in *Hill* v. *International Products Co.* (198 App. Div. 591), where Mr. Justice PAGE wrote (at p. 593): " While the right of a foreign executor or administrator to sue or to be sued in any court in this State, in his representative capacity, in like manner and under like restrictions as a non-resident may sue or be sued, is expressly stated in section 1836-a of the Code of Civil Procedure, the Court of Appeals (*Helme* v. *Buckelew*, 229 N. Y. 363, 373) has held that this section was

intended to remove the disability and allow the foreign executor
or administrator free access to our courts, but not to remove their
immunity from action in this State; that the law was unchanged
in that regard."

And at page 594: " The fact that there are assets of the estate
in this State does not give the court jurisdiction of this action.
The purpose of the action is not to compel an administration of
these assets here, nor to impress a trust or an equitable lien upon
them. It is, therefore, not an action *in rem* or affecting the *res*,
as was *Holmes* v. *Camp* (219 N. Y. 359). The action has nothing
to do with the estate or its administration. It is solely to establish,
so far as this defendant is concerned, the liability of Theo. N. Vail's
executor for the acts of the testator. I do not find that this
action is within any of the exceptions to the general rule which
existed prior to the enactment of section 1836-a. Therefore, under
the authority of *Helme* v. *Buckelew* (*supra*) the order should be
reversed." The appeal taken in that case was dismissed by the
Court of Appeals (232 N. Y. 592).

Nor do I find any force in the contention that the foreign
executors have submitted themselves to the jurisdiction of the
court by a voluntary general appearance. On the contrary, they
appeared by attorneys solely and specially for the purpose of urging
their claim that the court had no jurisdiction over them or either
of them, nor over any assets of the estate of the deceased. The
affidavits of the executors and their notice of motion clearly and
unmistakably demonstrate this. They come, therefore, within the
rule laid down in *Muslusky* v. *Lehigh Valley Coal Company* (225
N. Y. 584, 587): " When the summons has been served on a
defendant who does not intend to submit himself to the jurisdiction
of the court over his person, he may elect to remain out of court
but he need not wait until the entry of judgment against him
by default. He may appear specially. (*Goldey* v. *Morning News*,
156 U. S. 518; *Reed* v. *Chilson*, 142 N. Y. 152.) The special appear-
ance is recognized only for the purpose of raising the question
whether the court has obtained jurisdiction over the defendant
personally or throguh his property. If the defendant serves a
general notice of appearance, his right to assail the claim of juris-
diction over his person is waived. (Code Civ. Pro. § 421;* *Reed* v.
*Chilson, supra.*) If a motion to vacate the service of the summons
on a special appearance is first made, the defendant may by answer
iterate the plea to the jurisdiction. (*Toledo Rys. & Light Co.* v.
*Hill*, 244 U. S. 49.) "

---

* Now Civ. Prac. Act, § 237. See, also, Code Civ. Proc. § 424.— [REP.

It follows that the court was without jurisdiction of the defendant foreign executors. This remits plaintiffs to their remedies under the Surrogate's Court Act by way of ancillary letters.

The order appealed from should, therefore, be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

CLARKE, P. J., MERRELL, FINCH and McAVOY, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.