ELIZABETH C. REGAN, Plaintiff, *v.* NANCE O'CONNOR NELDEN and
Another, Defendants.

Supreme Court, Special Term, Nassau County, January 15, 1942.

*Wellman, Smyth, Lowenstein & Fennelly,* for the plaintiff.

*Davies, Auerbach, Cornell & Hardy,* for the defendants.

FROESSEL, J. Plaintiff challenges the sufficiency of the two defenses alleged in the answer, pursuant to subdivision 6 of rule 109 of the Rules of Civil Practice.

The complaint contains two causes of action. In the first, plaintiff sues defendants, as ancillary administrators of a New Jersey estate, on an alleged oral agreement between plaintiff and decedent, whereby the latter agreed to bequeath one-third of her " residual personal property " in consideration of services to be performed by the former. Upon this cause of action, plaintiff prays for a money judgment of $60,000 and interest. In the second cause of action, plaintiff seeks recovery from the said defendants of a diamond ring alleged to have been in the possession of decedent and belonging to the plaintiff, " or in case possession thereof cannot be given to the plaintiff," she demands a money judgment for $2,500 with interest.

The first defense relates solely to the first cause of action. It is there asserted that the alleged oral agreement to make testamentary provision is void under subdivision 7 of section 31 of the New York Personal Property Law, and that to allow a remedy thereon in this court is not required by comity, but is against the public policy of this State and the law of this forum.

Upon the present application, I am of the opinion that the first defense should be permitted to stand. I am mindful of the fact that there has been much diversity of opinion in the books as to whether our courts would enforce a foreign oral agreement violative of the Statute of Frauds, even if good in the jurisdiction where made. (*Russell* v. *Societe Anonyme d. E. Aeroxon,* 268 N. Y. 173; 1 Williston on the Law of Contracts, [1920] § 527, pp. 1016, 1017; 1 Williston on Sales [2d ed.], § 71a, p. 117; Anson on the Law of Contract [5th Am. ed. Corbin], pp. 109–112; 47 Harv. L. Rev. 315, 320; Goodrich on Conflict of Laws [1st ed.], § 88, p. 173.)

Our Court of Appeals in *Reilly* v. *Steinhart* (217 N. Y. 549) refused to decide the question as to whether a contract is governed, with respect to the Statute of Frauds, by the law of the forum or by the substantive law of the contract. The question was also left open in *Russell* v. *Societe Anonyme d. E. Aeroxon* (*supra*) where a complaint was successfully challenged because it failed to allege, as plaintiff has done in this case, that the oral contract was made in the foreign jurisdiction and was enforcible therein. But the answer in the instant case denies these allegations, and pleads the New York Statute of Frauds. These denials may be deemed part of said defense, for any fact once denied shall be deemed denied for all purposes of the pleading. (Rules Civ. Prac. rule 90; *Lewis* v. *Board of Education of City of New York*, 247 App. Div. 106.) If plaintiff here should fail to prove that the alleged oral agreement was made in the State of New Jersey, and defendants should prevail as to these denials, the law of New York would apply (*Russell* v. *Societe Anonyme d. E. Aeroxon, supra*), and in that case the defendants would be bereft of their said defense, if now stricken. Moreover, one cannot now foretell what the evidence may develop as to the surrounding facts and circumstances and the intention and acts of the parties in this connection. (*Wilson* v. *Lewiston Mill Co.*, 150 N. Y. 314, 322–324.) The matter must be left to the trial court for disposition.

The second defense relates to both causes of action. It is there alleged (1) that the plaintiff submitted her claims to the New Jersey courts, which are exercising complete and exclusive jurisdiction thereof in the administration of the estate of the decedent; (2) that the defendants, as ancillary administrators, as aforesaid, have not now, and never have had, any right, title or interest in, or possession of, the residual personal estate of the decedent or of the ring, but in accordance with section 164 of the New York Surrogate's Court Act, are under the duty of transmitting, and have transmitted, moneys of the decedent to the State of New Jersey, where the principal letters were granted, to be disposed of under the laws of said State; and (3) that this court has no jurisdiction over the subject-matters of this action or over the New Jersey administrators.

From these allegations, it cannot be determined in what manner the plaintiff submitted her claims, and in what manner the New Jersey courts are exercising complete and exclusive jurisdiction. These allegations further indicate that the ancillary administrators never had title to or possession of the residual personal estate or of the ring, but have *already transmitted* moneys of the decedent to the State of New Jersey. The phase of this defense most strongly

urged by these defendants is, however, that this court has no jurisdiction over the subject-matters of this action.

It will be noted that the first cause of action demands nothing but a money judgment. The second cause of action demands delivery of the ring or a money judgment for the value thereof. The defendants' denial of possession and wrongful detention of the ring is part of their defense (Rules Civ. Prac. rule 90), and if sustained by the evidence, the second cause of action, if recovery is had, could only result in a money judgment.

It is well settled, and upon the argument both sides conceded, that actions at law to be followed by the ordinary judgment *in personam*, may not be brought against foreign representatives of a decedent. (*Helme* v. *Buckelew*, 229 N. Y. 363; *McMaster* v. *Gould*, 240 id. 379.) However, as CARDOZO, J., pointed out in the *Helme* case (pp. 367, 368): " But even without waiver of immunity, a court of equity took jurisdiction at times over foreign representatives when it was necessary to intervene for the administration of local assets (*Field* v. *Gibson*, 20 Hun, 274, 276; *Lockwood* v. *Brantly*, 31 Hun, 155, 157; *McNamara* v. *Dwyer*, 7 Paige, 239; *Brown* v. *Brown*, 4 Edw. Ch. 355; *DeCoppet* v. *Cone*, 199 N. Y. 56, 61; *Bergmann* v. *Lord*, 194 N. Y. 70. Cf. Dicey, *supra*). That jurisdiction was exceptional, and was kept within narrow bounds. It was not extended to actions at law, at least since the statutes abolishing the office of an executor *de son tort* (*Brown* v. *Brown*, *supra*, distinguishing *Campbell* v. *Tousey*, 7 Cow. 64. See, also, *Field* v. *Gibson*, *supra*; *DeCoppet* v. *Cone*, *supra*; *Holmes* v. *Camp*, 219 N. Y. 359, 372). It was limited to cases where a failure of justice would follow if equity withheld relief. Either the foreign representative by a *devastavit* or other tort had put himself in the position of an individual wrongdoer (Dicey, *supra*), or there was a *res* within the jurisdiction to be disposed of or preserved (*Holmes* v. *Camp*, *supra*)." (The Dicey reference is to his Conflict of Laws [2d ed.], p. 451.)

But no equitable action is pleaded in the complaint, nor is the complaint based on section 165 of the Surrogate's Court Act; there are no allegations that plaintiff is a resident or local creditor, that there are no other resident creditors, nor that any assets of the estate were in the State *at the time of the commencement of this action*. As was said in *Helme* v. *Buckelew* (*supra*, 371): " If possession of the *res* is the foundation of jurisdiction, that possession must be acquired when jurisdiction is assumed [cases cited]."

The fact that ancillary administrators have been appointed in this State does not establish the foregoing allegations, nor does it aid the plaintiff on this application. In this connection, the language of CARDOZO, J., in *Helme* v. *Buckelew* (*supra*, 369) is

particularly appropriate: " The man who is the foreign adminis-trator we may make our own administrator if we please, when the nature of the estate involves the need of administration here. In making him our own, we do not change the source of his primary appointment or his duty and relation to the power which appointed him. The situation is not so clear when there is occasion to apply the statute to executors. The only effect of probate in their case is to authenticate an existing title. [Citations.] If this State is satisfied to accept the authentication of title by another State, and to give it the same effect as if new letters were issued here, I will not say that it may not do so. I am satisfied that it may when it gives effect to the foreign letters in the administration of the local assets. A different question arises, however, when a jurisdiction which has neither the domicile of the testator nor the presence of assets to bring the estate within its grasp, attempts to impose its decree upon the jurisdiction which has possession of the *res* (*Tilt* v. *Kelsey*, 207 U. S. 43; *Matter of Horton*, 217 N. Y. 363, 371; * * *)." And continuing (at page 371): " I am persuaded that the Legislature did not contemplate the maintenance of actions at law to be followed by the ordinary judgment *in personam* against foreign representatives, whether there were assets in the State at the end of the litigation or even at the beginning. If such actions are authorized, I do not know how we are to enforce the judgments. Surely the plaintiff is not expected to sell the property upon execution, and appropriate it to the use of himself and no one else. That would conflict with the scheme of the statute regulating suits against ancillary executors and administrators (Code Civ. Pro. sec. 2635), and with the whole theory and framework of legislation in respect of the distribution of estates (Code Civ. Pro. secs. 1824, 1825). The general duty of ancillary representatives is to transmit the assets to the domicile (Code Civ. Pro. sec. 2634), and the utmost the surrogate may do is to direct that a *pro rata* share be retained for local creditors (Code Civ. Pro. sec. 2365; *Bostwick* v. *Carr*, 165 App. Div. 55). It is incredible that we should have two repugnant schemes in the same code of practice, one permitting a creditor to appropriate the entire fund by suing the foreign repre-sentative, and the other restricting him, when he sues the ancillary representative, to a ratable division. If such inconsistencies are possible, we ought to exact clear and definite language before holding that they were intended." (Sections 2634 and 2635 of the Code of Civil Procedure are now sections 164 and 165 of the Surro-gate's Court Act.) (See, also, *Wedemann* v. *United States Trust Co.*, 258 N. Y. 315, which follows *Helme* v. *Buckelew*, *supra*, and specifically points out that foreign and ancillary administrators, as

distinguished from foreign and ancillary executors, do not essentially differ from each other.)

In the light of the foregoing, I am of the opinion that under the allegations of plaintiff's present complaint, the second defense, coupled with the denial aforesaid, is legally sufficient.

Accordingly, the motion to strike out the first and second defenses is in all respects denied, with ten dollars costs.