In the Matter of the Arbitration between R. B. GANTT, Doing Business under the Name of SOUTHLAND SUPPLY COMPANY, Petitioner, and FELIPE Y CARLOS HURTADO & CIA, LTDA., Respondent. ELLA H. GANTT, as Executrix of R. B. GANTT, Deceased, Appellant.

First Department, June 7, 1955.

*Paul Kerins* of counsel (*Dwight, Royall, Harris, Koegel & Caskey,* attorneys), for appellant appearing specially.

*Eben C. Gould* for respondent.

BREITEL, J. Involved in this case is the question whether a foreign executrix may, in her official capacity, be compelled to arbitrate a dispute to which her decedent was a party. It is this court's view that Special Term had no power to so direct the foreign executrix.

Petitioner, a buyer of lumber prior to his death, and respondent, the seller, entered into contracts in 1946, containing a provision for arbitration in this State of any controversies or claims arising out of the contracts. When a dispute arose, because of the buyer's failure to supply a letter of credit, the seller demanded arbitration. The buyer, as petitioner, then instituted this proceeding, applying for a stay of arbitration and a trial by jury of the issue of fact as to the making and validity of the alleged contracts. The application was granted on condition that petitioner " shall duly pay the fees required by law ".

Rather than comply with the condition of the order, petitioner moved for a permanent restraining order on the ground that the law of North Carolina, where the alleged contracts were made,

prevented arbitration. Following a denial of this motion, petitioner successively and unsuccessfully appealed. (272 App. Div. 801, affd. 297 N. Y. 433, certiorari denied 335 U. S. 843.)

Although certiorari was denied by the Supreme Court of the United States in October, 1948, no steps were taken by petitioner or, after his death, his executrix, to comply with the court's order which conditionally stayed arbitration. In July, 1952, petitioner, a domiciliary of North Carolina, died in that State. His executrix, a resident of North Carolina, was appointed by a court of that State. No ancillary letters have been issued by any court in this State and no asset of petitioner's estate is in New York.

The issue involved in this case has arisen as a result of a motion made by the seller to (1) substitute the executrix as petitioner in this proceeding; (2) dismiss this proceeding to stay arbitration; (3) vacate the stay of arbitration heretofore issued; and (4) direct the executrix to proceed to arbitration. The executrix, appearing specially, cross-moved to set aside service. Special Term granted respondent's motion in full and denied the cross motion.

It has long been the law in this State that a foreign personal representative may not, in his official capacity, be substituted for a nonresident party who dies during the pendency of an in personam proceeding in a court of this State. (*McMaster* v. *Gould,* 240 N. Y. 379; *Helme* v. *Buckelew,* 229 N. Y. 363; *Neuberger* v. *Hart,* 266 App. Div. 612; Seventeenth Annual Report of N. Y. Judicial Council, 1951, p. 153 *et seq.*) The only exception to this rule exists where the proceeding involves determination as to a *res* within the jurisdiction of the court. Thus, in the *McMaster* case (*supra,* p. 386) where the court held that due process precludes the Legislature from providing generally for the continuance of actions in personam against foreign personal representatives of deceased defendants, the court observed: " The executor as individual and as an official is in the theory of law two persons. Even as to foreign executors, there must be a domicile or possession which gives to the *res* to be administered a situs in New York."

Applying these principles to the instant case, we are of the view that the foreign executrix could be given notice, as if a party, for the limited purpose of vacating the outstanding stay and dismissing the proceeding instituted by her decedent for stay of arbitration. It is so held because no liability of the estate or of the personal representative is at stake. Also, a court has power to dispose of a proceeding pending before it,

and, if such limited substitution is required to effectuate that power, the personal representative may be thus substituted.

But, the court does not have power to direct the executrix to proceed to arbitration. In support of the contrary view it is contended that the arbitration proceeding itself may be treated as in the nature of a *res*. It is manifest, however, from the decisions that the term is confined to property or extrinsic status cognizable in law. (*McMaster* v. *Gould, supra*; *Helme* v. *Buckelew, supra*; cf. *Kirkbride* v. *Van Note*, 275 N. Y. 244.)

It is also argued that, if the decedent has consented to submit the controversy to arbitration, his executrix should be in no position to do that which the decedent himself cannot do, namely, repudiate the agreement to arbitrate in New York. There is no merit to this argument. In the first place, it is doubtful that even the executrix herself can consent to being sued in any jurisdiction other than the State of her appointment. (*Burrowes* v. *Goodman*, 50 F. 2d 92, certiorari denied, 284 U. S. 650; see, generally, Goodrich on Conflict of Laws [3d ed. 1949], pp. 562–566.) Secondly, we are here dealing with the Constitutional power of the State to deal with a person who has no cognizable status in New York. The administration of the foreign estate is subject solely to the jurisdiction of the court which appoints the foreign representative and another State may not interfere with that administration. (*McMaster* v. *Gould, supra*; Goodrich on Conflict of Laws, *supra*.)

Finally, it is argued that this court, in order to prevent injustice, should direct the executrix to arbitrate. Cited for this proposition, however, is authority which allows suits *by* foreign personal representatives on the ground that principles of comity permit such suits. (See, e.g., *Helme* v. *Buckelew, supra*, pp. 372–373.) Where, to prevent failure of justice, suit *against* the foreign personal representative has been allowed, it has involved a *res* within the court's jurisdiction. (See *Kirkbride* v. *Van Note, supra*; *Neuberger* v. *Hart, supra*.) These cases are, however, inapplicable, for the reason that there no liability was sought to be imposed on the estate, or enforced against its assets generally, through the personal representative. (Cf. *Helme* v. *Buckelew, supra*; see *Neuberger* v. *Hart, supra*.)

Cases involving enforcement of agreements for arbitration in a foreign State without personal service on the nonresident are wholly irrelevant. They turn on consent by a nonresident or foreign corporation to jurisdiction in personam, always a basis for the exercise of judicial power over the person. An executrix, and, in a parallel case, an administrator or the public adminis-

trator, is not an agent of a deceased person. Such consent would not bind the executrix. An executrix is merely the nominee, who, if qualified, is appointed by the court of probate jurisdiction to administer the decedent's assets on behalf of the court, in accordance with the wishes of the decedent, following the will, to the extent permitted by law. Her authority is derived from the court, and the representative capacity stops at the borders of the State of jurisdiction. (*Helme* v. *Buckelew, supra.*) So, even where there are assets in this State, ancillary letters must be obtained and the foreign representative or another appointed to administer those assets. (Surrogate's Ct. Act, §§ 159–166.)

To call an arbitration proceeding, or a proceeding to compel or stay arbitration, abated by death of one of the parties, a *res* upon which due process may be depended to bring in the personal representative of the deceased, is the indulgence of the barest fiction. But, even if one were to view it as a *res,* it is not one to which the official capacity of the personal representative in probate proceedings may attach. That capacity attaches only to the assets. (*McMaster* v. *Gould, supra.*) Jurisdiction as to a *res* extends only to the *res* and, to that limited extent, may bind those who have a titular or possessory right to the *res,* but not one who is a stranger to it. Thus, the fundamental rule then becomes operative, namely, that the power of the court, when there is only in rem jurisdiction, is limited to execution against the *res,* although binding on all. (*Pennoyer* v. *Neff,* 95 U. S. 714.) If the arbitration proceeding is a " *res* ", all the court can do is to execute against it — there would be no status and no property that would survive it. That would be of little avail to the respondent here when he seeks to collect on his claim in North Carolina out of the assets situated there. If a court should confirm the award and grant a judgment in personam, it would be void and not entitled to full faith and credit.

To say that to compel arbitration in this case is not to force the executrix to come into the jurisdiction but to prevent her from forsaking and repudiating a jurisdiction invoked by her decedent, does not progress the analysis of the problem. The fact is that the executrix is not here. Were she to come physically as an individual, she still would be here without official capacity. (*McMaster* v. *Gould, supra.*) The courts of this State just do not have the power, certainly in the absence of consent, and maybe even with consent, to direct in personam an officer of another State, which is what the decedent's executrix is, to proceed with an arbitration. She is not the decedent's agent or

privy, and, for the purposes of jurisdiction, she does not stand in his shoes. Of course, where she properly exercises her official capacity she exercises them subject to the rights and obligations applicable to the decedent, not as agent or privy, but as a successor, and then only when and where she acts in her official capacity. She has possession and authority only over his assets in the State of appointment, where, presumably, she is suable and may sue.

Put another way, consent to jurisdiction in personam is the due process equivalent to personal service within the State. If the decedent's consent to arbitration was sufficient to subject him to arbitration within the State without personal service, it did not serve to do more than confer over him jurisdiction in personam. But, it is quite clear that, in an action in personam, there is no basis for regarding the action as a *res* upon which jurisdiction may depend for the purpose of continuing the action against the foreign representative of the deceased defendant. Thus, in the *McMaster* case (240 N. Y. 379, 388, *supra*), it was said, speaking of the Legislature: '' the constitutional requirement of due process of law precludes the Legislature from providing generally for continuing actions for judgments *in personam* against the foreign executors or administrators of deceased defendants ''. The same constitutional requirement inhibits the court from continuing this special proceeding and the impending arbitration against the foreign executrix, merely because decedent consented to jurisdiction in personam in the special proceeding.

Accordingly, the order should be modified to strike the provision that the parties are directed to proceed to arbitration, and, as so modified, affirmed, with $20 costs and disbursements of this appeal to appellant.

RABIN, J. (dissenting). I dissent and vote to affirm the order of Special Term in all respects.

In 1946, contracts for the purchase and sale of a quantity of lumber were entered into between respondent, a Nicaragua firm and the Southland Supply Co., of High Point, North Carolina, under which name the appellant's decedent was doing business. These contracts provided that any dispute thereunder would be arbitrated in New York. A dispute having arisen respondent asserted its right to arbitration here, but decedent, appearing and invoking the jurisdiction of our courts, asked that the arbitration be stayed and that he be granted a trial by jury on the issue as to the making and validity of the alleged contracts. That

application was granted and decedent was allowed a jury trial on condition that he pay the required fees. Instead of doing so he moved for a permanent restraining order contending, by reason of the law of North Carolina, where the contracts were made, that arbitration could not be enforced in any State court of the United States. That motion was denied and appeals by the decedent to this court, the Court of Appeals and the Supreme Court of the United States were unsuccessful. Decedent died in 1952 and appellant was appointed executrix. No further steps having been taken by the decedent or the executrix with respect to their right to a jury trial, respondent moved to substitute the executrix in place of decedent, to vacate the stay of arbitration and to direct that the arbitration proceed. Service of the order to show cause was made upon the attorney for decedent and also by mail upon the executrix in North Carolina. The executrix has appeared specially, claiming that the New York courts have no jurisdiction over her. This appeal is from the order of Special Term which substituted the executrix as petitioner, dismissed the proceeding to stay arbitration, vacated the stay and directed the parties to proceed to arbitration.

We all agree that the foreign executrix can be substituted as a party for the purpose of vacating the outstanding stay and dismissing the proceeding instituted by her decedent for a stay of arbitration, but a majority of this court believes that we are without power to direct the executrix to proceed with the arbitration.

The position of the appellant executrix is that, lacking her voluntary appearance and without a *res* on which to base jurisdiction in rem, we may not direct arbitration. While there is no *res* here in the sense of there being physical or tangible property within the jurisdiction, nevertheless there may be said to be a *res* in the sense of a situs of the controversy, arising out of the contract of the parties when they agreed that any controversy would be determined by arbitration in the State of New York. *Res* has been aptly defined as " everything that may form an object of rights ". (See Cyclopedic Law Dictionary [3d ed.].) Thus it would seem that when the parties by their contracts selected New York as the place for arbitration they created here something that most certainly was " an object of rights ", and to that extent it may fairly be said a *res* was established.

There is support too, in the cases, for this theory. In *Prosperity Co.* v. *American Laundry Mach. Co.* (271 App. Div. 622, affd. 297 N. Y. 486) a New York and an Ohio Corporation agreed to arbitrate any controversy, either under the laws of New York

or the laws of Ohio. It was held that an arbitration award obtained in Ohio against the New York corporation was valid and enforcible in this jurisdiction even though the New York corporation did not appear in Ohio, was not served there and received notice of the proceeding only by mail sent to New York. While the case was decided on the theory that defendant was bound by its prior consent to arbitrate either in New York or Ohio, and also on the basis of public policy, inherent in the decision is the conclusion that there existed something in the nature of a *res*, else the Ohio court could not have proceeded without personal service on the defendant within that jurisdiction. To the same effect is *Gilbert* v. *Burnstine* (255 N. Y. 348).

In the light of these cases we would have no problem at all if the decedent were alive and respondent were seeking to enforce arbitration against him in this jurisdiction, even if he chose not to come here. We see no reason why a different rule should be applied to his executrix insofar as jurisdiction is concerned. She should not be permitted to do what the decedent himself could not do, namely, repudiate the contract to arbitrate in New York. If, as we think, the agreement of decedent to submit the controversy to arbitrate here, created something sufficient to permit the court to act without personal jurisdiction (*Prosperity Co.* v. *American Laundry Mach. Co.*, *supra*; *Gilbert* v. *Burnstine*, *supra*), decedent's death could not destroy that something, *res* or situs or whatever name it be given. Consequently, the presence here of the executrix would seem to be no more necessary than it would have been in the case of decedent.

It must also be remembered that the decedent, who chose this jurisdiction as the form for arbitration, was the same person who chose appellant as his executrix. She is not a stranger and cannot divorce herself from the decedent's commitment to arbitrate in New York. The controversy having been brought here by decedent it is for his designated representative to dispose of it here.

It seems hardly correct to say that by directing arbitration we are attempting to bring a foreign executrix into this jurisdiction. We are not bringing the executrix here, but in effect we are refusing to let her forsake and repudiate this jurisdiction which decedent by his contract provided for and by his subsequent appearance here actually invoked.

The present case differs from those which express the general rule that a foreign executor may not sue or be sued in an official capacity in this State. The distinguishing factor here, and one which does not appear to be present in any of the cases cited,

is that the decedent by his own act conferred jurisdiction on the courts of this State and gave them the power to act despite the absence of personal jurisdiction.

If we are correct in our view that the executrix stands in the place of the decedent for jurisdictional purposes then even if we do not expressly direct her to proceed with arbitration, any subsequent award made in the proceeding would nevertheless be binding on her if she failed to appear after due notice of the proceeding and sufficient opportunity to appear (*Prosperity Co.* v. *American Laundry Mach. Co., supra; Gilbert* v. *Burnstine, supra*).

The order should be affirmed in all respects, with costs.

COHN and BASTOW, JJ., concur with BREITEL, J.; RABIN, J., dissents and votes to affirm, in opinion in which PECK, P. J., concurs.

Order modified to strike the provision that the parties are directed to proceed to arbitration and, as so modified, affirmed, with $20 costs and disbursements to the appellant. Settle order on notice.