Saverio D. IOVINO and Leonard P. Luisi,
Plaintiffs-Appellees,

v.

George WATERSON, Jr., Defendant.

Frances E. Carlin, as Administratrix of
George Waterson, Sr., Deceased, Sub-
stituted Defendant-Appellant.

No. 20, Docket 25575.

United States Court of Appeals
Second Circuit.

Argued Oct. 9, 1959.

Decided Dec. 1, 1959.

Robert M. Reagan, New York City (Abrams & Fastenberg, New York City, and Gustave G. Rosenberg and Lawrence M. Rosenberg, New York City, on the brief), for plaintiffs-appellees.

Joseph A. Doran, New York City (John E. Morris, New York City, on the brief), for substituted defendant-appellant.

Before LUMBARD, WATERMAN and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

The question is whether, in a suit removed to the Southern District of New York because of diversity of citizenship, the District Court could order substitution of an administratrix *ad litem* of the defendant appointed in New Jersey, under F.R.Civ.Proc. 25(a) (1), quoted in footnote 2 below, although application for this was not made until more than two years after defendant's death. We hold that it could.

The suit was brought by plaintiffs, residents of New York, to recover for personal injuries sustained in Virginia in December, 1954, while passengers in an automobile owned by defendant and operated by his son, who was killed. The action was begun in March, 1955, in the Supreme Court, New York County, by the service of summons in New York on Waterson, a resident of New Jersey. The defendant removed to the District Court. On April 24, 1955, Waterson died intestate. He left no property in New York, other than such rights of exoneration or indemnity, if any, as he may have had from insurers in connection with the claims here asserted. Plaintiffs' attorneys remained ignorant of defendant's death, and the attorney who appeared for Waterson and now appears as attorney of record for the administratrix asserts that he likewise was. In May, 1955, plaintiffs' attorneys served a complaint on the attorney who had appeared for Waterson. The latter accepted service, served an answer, and, in 1956, examined plaintiffs before trial and participated in pre-trial conferences before the District Court. No mention was made of Waterson's death.

It was not until the spring of 1958 that plaintiffs' attorneys learned of this. They promptly took appropriate proceedings in New Jersey for the appointment of an administratrix *ad litem* and then moved in the District Court for an order substituting her as defendant in this action and granting them leave to serve an amended complaint. Over the objection of the administratrix, the District Court granted the relief sought. On motion made by the administratrix within 10 days thereafter, the District Court amended its order to include the certificate required as a premise for a motion for leave to appeal under 28 U.S.C.A. § 1292(b). This Court granted such leave.

The order substituting the New Jersey administratrix can stand only if plaintiffs are able to establish each of the following propositions:

I. F.R.Civ.Proc. 25(a) (1) permits the substitution of personal representatives of non-resident as well as of resident decedents.

II. A Federal Rule permitting the substitution of the personal representative of a non-resident decedent does not violate the due process clause of the Fifth Amendment.

III. Application of a Federal Rule permitting the substitution of the personal representative of a non-resident decedent in a suit where Federal jurisdiction is based on diversity of citizenship and in a state that has not permitted such substitution, is not beyond the scope of the act, 28 U.S.C.A. § 2072, authorizing the Supreme Court to establish rules for "the practice and procedure of the district courts of the United States" and does not go beyond Federal legislative power.

IV. Plaintiffs are not precluded from effecting substitution under F.R.Civ. Proc. 25(a) (1) because of their failure to act within the two-year time limit there provided.

We shall examine these propositions and set forth our reasons for believing that plaintiffs can carry each of them.

## I.

*F.R.Civ.Proc. 25(a) (1) permits the substitution of personal representatives of non-resident as well as of resident decedents.*

The provisions of F.R.Civ.Proc. 25(a) (1) in regard to substitution must be considered in the light of the development of the law as to the revivor of actions against foreign administrators in state and Federal courts. This we shall now summarize.

The American Law Institute's Restatement of the Law of Conflict of Laws states, § 512, "No action can be maintained against any administrator outside the state of his appointment upon a claim against the estate of the decedent." A comment says this rule applies "although the action in which it is now sought to make the foreign administrator a party was begun against the decedent in his lifetime and the Court had jurisdiction over his person." In the view of the reporter, this doctrine, to which he was deeply attached, rested not merely on the difficulties that such an action would cause to orderly administration but "upon a much more fundamental reason than mere expedience," 3 Beale, Conflict of Laws 1553.[1]

The rule of the Restatement was supported by decisions of the courts of New York. In Helme v. Buckelew, 1920, 229 N.Y. 363, 128 N.E. 216, Judge Cardozo had expounded the received doctrine and, in order to avoid constitutional doubts, had construed § 1836a of the Code of Civil Procedure, Laws 1911, ch. 631, which had granted broad permission for foreign executors and administrators to sue or be sued, as authorizing only suits by them and those suits against them where "the subject-matter subjects them to the jurisdiction" (229 N.Y. at page 373, 128 N.E. at page 219). Five years later the New York Legislature, in an amendment to § 160 of the Decedent Estate Law, provided for revivor against foreign executors and administrators in

1. Professor Beale elaborated this as follows: "The court in this case * * * [would be] attempting to impose an obligation owed by the deceased upon another person, his executor. Such an imposition could be made only by a sovereign having power over the executor * * * By taking upon him the administration of the estate in the state of his appointment he submitted to the obligations which the administration entailed under the laws of that state, but he submitted to none which rose under the laws of another state. To render judgment against him in another state would be forcing him against his will to pay another man's debts." 3 Beale, The Conflict of Laws, 1554 (1935). The treatise draws no distinction between initiating and reviving suits against foreign personal representatives. In Professor Beale's view even consent by the foreign personal representative was ineffective. He permitted an exception only where it could be affirmatively shown that the courts of the appointing state would recognize the judgment. 3 id. at 1555–1558.

language that defied the negating construction of Helme v. Buckelew. The Court of Appeals answered, in an opinion by Judge Pound, that "on the authority of recent and persuasive *dicta* in Helme v. Buckelew, supra, as herein enlarged, the constitutional requirement of due process of law precludes the Legislature from providing generally for continuing judgments *in personam* against the foreign executors or administrators of deceased defendants." McMaster v. Gould, 1925, 240 N.Y. 379, 388, 148 N.E. 556, 559, 40 A.L.R. 792. The Court made clear just what due process requirement it had in mind by quoting (240 N.Y. at page 385, 148 N.E. at page 559) from Pennoyer v. Neff, 1878, 95 U.S. 714, 733, 24 L.Ed. 565.

The Federal courts in New York had earlier reached the same result, Lawrence v. Southern Pacific Co., C.C.E.D.N.Y. 1910, 177 F. 547; Stromeyer Co. v. Aldrich, D.C.E.D.N.Y.1915, 227 F. 960. Indeed, Judge Learned Hand's opinion in Thorburn v. Gates, D.C.E.D.N.Y.1915, 225 F. 613, was a precursor of the construction of § 1836a of the Code of Civil Procedure later adopted by Judge Cardozo in Helme v. Buckelew. Once the New York courts had spoken, the Federal courts in New York would have followed the New York decisions, even without benefit of Erie, so long as Congress had not given a contrary direction, Baltimore & Ohio R. v. Joy, 1899, 173 U.S. 226, 19 S.Ct. 387, 43 L.Ed. 677.

In 1921 Congress gave such a direction. Ever since the first Judiciary Act, Rev.Stat. § 955, it had been provided that "When either of the parties, whether plaintiff or petitioner or defendant, in any suit in any court of the United States, dies before final judgment, the executor or administrator of such deceased party may, in case the cause of action survives by law, prosecute or defend any such suit to final judgment."

By the Act of November 23, 1921, 42 Stat. 323, Congress amended this provision, then embodied in 28 U.S.C. § 778, by adding a new paragraph that "the jurisdiction of all courts of the United States shall extend to and over executors and administrators of any party, who dies before final judgment or decree, appointed under the laws of any State or Territory of the United States, * * * and such courts shall have jurisdiction within two years from the date of the death of the party to the suit to issue its *scire facias* to executors and administrators appointed in any State or Territory of the United States which may be served in any judicial district by the marshal thereof." The legislative history placed it beyond doubt that the intention was to reverse for the Federal courts the rule of no revivor by or against administrators or executors appointed by the courts of another state or territory. H.R.Rep. No. 429, 67th Cong., 1st Sess., 1–2; 61 Cong.Rec. 7056.

The Federal courts applied the 1921 amendment in accordance with its language and declared purpose. Luster v. Martin, 7 Cir., 58 F.2d 537, certiorari denied 1932, 287 U.S. 637, 53 S.Ct. 86, 77 L.Ed. 552; Plimpton v. Mattakeunk Cabin Colony, D.C.D.Conn.1934, 6 F. Supp. 72, and cases cited. No consideration appears to have been given at the time to whether the difficulties that had led the Court of Appeals to hold the act of the New York legislature offensive to the due process requirements of the Fourteenth Amendment created any problem for Congress under the Fifth. Nor in those days, when "*Erie* was still hidden in the mist of the future," Robert Lawrence Co. v. Devonshire Fabrics, 2 Cir., 271 F.2d 402, was question raised whether the 1921 enactment went beyond Federal legislative power.

Federal Rule 25(a) (1), which we quote in the margin,[2] carried forward 28

---

2. "Substitution of Parties
"(a) Death.
"(1) If a party dies and the claim is not thereby extinguished, the court within 2 years after the death may order substitution of the proper parties. If substitution is not so made, the action shall be dismissed as to the deceased party. The motion for substitution may be made by the successors or representa-

U.S.C.A. § 778, including the 1921 amendment permitting revivor by or against foreign administrators or executors. Although the simple phrase used in the Rule, "substitution of the proper parties," might not alone have sufficed to evidence that intent, the retention of the 1921 provision for service "in any judicial district" and the note of the Advisory Committee make it plain that the purpose was to include the 1921 amendment for revivor by or against foreign personal representatives, 4 Moore, Federal Practice ¶25.05, at 518 (2d ed. 1950).

The final chapter in this history is the repeal of 28 U.S.C.A. § 778 by the Revision Act of 1948, 62 Stat. 993. However, since this repeal was for the stated reason that § 778 was "Superseded by Rules 25 and 81 of the Federal Rules of Civil Procedure," H.R.Rep.No. 308, 80th Cong., 1st Sess., Rule 25(a) (1) must still be construed to include foreign administrators and executors, 4 Moore, Federal Practice ¶25.05, at 518.

## II.

█ *A Federal Rule permitting the substitution of the personal representative of a non-resident decedent does not violate the due process clause of the Fifth Amendment.*

Whether or not the Fourteenth Amendment bars New York from enacting a general statute bringing foreign administrators into suits validly commenced against their decedents, we think the Fifth Amendment creates no bar to such action by Congress.

Since "Congress could provide for service of process anywhere in the United States," Mississippi Publishing Corp. v. Murphree, 1946, 326 U.S. 438, 442, 66 S.Ct. 242, 245, 90 L.Ed. 185, it could have authorized the plaintiffs to sue in the Federal courts in New York and obtain jurisdiction of Waterson by service in New Jersey, as it has done in actions of many other sorts, 2 Moore, Federal Practice, ¶4.42 (2d ed. 1947). If Congress could thus have authorized service of process on Waterson in New Jersey, there would seem to be no greater due process objection to its authorizing the substitution of an administrator appointed by New Jersey. See Commercial Solvents Corp. v. Jasspon, D.C.S.D.N.Y. 1950, 92 F.Supp. 20. And even if it would be an unconstitutional intrusion on the sovereignty of New Jersey for New York to permit an action properly commenced against a New Jersey decedent to continue against his personal representative, a proposition which we deem doubtful, cf. Morris v. Jones, 1947, 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488, no such objection could prevail against the United States. For while New Jersey may not have yielded to a sister state power over an administrator appointed by its courts, it has yielded to the United States the power to take such action, consistent with procedural fairness, as is appropriate to make effective the grant of judicial power in Article III over controversies between "Citizens of different States."

## III.

█ *Application of a Federal Rule permitting the substitution of the personal representative of a non-resident decedent in a suit where Federal jurisdiction is based on diversity of citizenship and in a state which has not permitted such substitution, is not beyond the scope of the act, 28 U.S.C.A. § 2072, authorizing the Supreme Court to establish rules for "the practice and procedure of the district courts of the United States" and does not go beyond Federal legislative power.*

Two other objections are made to the validity of F.R. 25(a) (1) as here sought to be applied. The first is that if the Rule is construed to permit the substitution of Waterson's administratrix, the

---

tives of the deceased party or by any party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district."

Rule would go beyond the authority conferred on the Supreme Court by the Enabling Act, 28 U.S.C.A. § 2072, to prescribe "the practice and procedure of the district courts of the United States" and would offend the direction in that Act that the rules "shall not abridge, enlarge or modify any substantive right." The second is that if the Rule is so construed and applied in a case such as this, where jurisdiction rests solely on diversity of citizenship, it transcends Federal legislative power, Erie R. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

The first objection would clearly have been without substance between the effective date of the Federal Rules in 1938 and the repeal of 28 U.S.C.A. § 778 by the Revision Act of 1948. During that decade the Rule permitting the substitution of foreign administrators and executors paralleled the statute. We think it would be a reversion to the formalism of a bygone age to hold that the repeal of 28 U.S.C. § 778 by the Revision Act for the stated reason that Fed.R.Civ. Proc. 25(a) (1) rendered § 778 unnecessary invalidated the very Rule whose existence was the avowed reason for the repeal. On the contrary, this action of Congress seems to evidence its belief in the consistency of the Rule with the Enabling Act. Moreover, whatever the applicability of an "outcome determinative" test to a conflict between Federal and state practice in diversity litigation may be, it would unduly restrict the grant of authority made by Congress to hold that a rule contravenes the Enabling Act as abridging, enlarging or modifying substantive rights merely because a provision admittedly procedural in nature either furthers or prevents the enforcement of such rights. For example, Fed. R.Civ.Proc. 37 provides that in the event of refusal to comply with discovery requests the court may make an order "refusing to allow the disobedient party to support or oppose designated claims or defenses * * *" Nothing could be better calculated to prevent the ultimate vindication of a "substantive right"; yet surely this Rule is within the scope of the power conferred by Congress. Cf. Sibbach v. Wilson & Co., 1941, 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479.

We turn therefore to the objection based on constitutional grounds. It has been said that "the question of substitution * * * is procedural, recognized by the rules as such, and not controlled or governed by local law." Jones v. Schellenberger, 7 Cir., 196 F.2d 852, 854, certiorari denied, 1952, La Reau v. Jones, 344 U.S. 876, 73 S.Ct. 171, 97 L.Ed. 679. See also 105 U.Pa.L.Rev. 1088, 1102. The analysis to support this conclusion in the instant case would be that the only substantive rights here are those created by the Virginia law of torts and recognized by the New York law of conflict of laws. Hence steps relating to the enforcement of these rights in New York against Waterson during his life or his representative after his death would be not substantive but procedural.

We have been warned, however, against too ready reliance on such a conceptual analysis. Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079. And appellant contends that an application of Fed. R.Civ.Proc. 25(a) (1) to bring her before the District Court, even in an action validly commenced against her decedent, would run counter to the statements in Guaranty Trust Co. of New York v. York, (326 U.S. at page 109, 65 S.Ct. at page 1470,) that the intent of Erie R. v. Tompkins, supra, "was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court," and that "for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away should not lead to a substantially different result." Literally appellant may be right. But we do not believe we can properly decide this case by a mere literal reading of Guaranty Trust Co. of New

York v. York any more than by applying the litmus-paper test there condemned. We think at least two factors make this a different case from Guaranty Trust Co. of New York v. York and call for a different result.

The first is that whereas in Guaranty Trust Co. of New York v. York there was a declared policy of New York, embodied in statute, that the action should not proceed, in no real sense can New York be said to have a policy against revivor against a foreign administrator. In 1911 and again in 1925, as we have seen, the New York Legislature endeavored to provide generally for such revivor. It failed only because the Court of Appeals then thought this would transgress limits placed upon New York by the Fourteenth Amendment.[3] See Leighton v. Roper, 1950, 300 N.Y. 434, 439, 91 N.E.2d 876, 879, 18 A.L.R.2d 537. The substitution provisions of § 84 of the Civil Practice Act, viewed simply as a matter of language and apart from the negative judicial gloss arising from supposed "problems of constitutional power" affecting New York but not the United States, are broad enough today to cover a foreign personal representative. When the New York Legislature amended § 52 of the Vehicle and Traffic Law in 1945, Laws, ch. 719, to provide that suits may be revived or even instituted against non-resident administrators or executors for damages sustained as a result of the operation of foreign-owned automobiles within the state, the Court of Appeals, in Leighton v. Roper, supra, sustained this against constitutional attack based on the doctrine of McMaster v. Gould, supra. The Court held that by driving his automobile into the state, the decedent "has consented to the statutory agency for the receipt of process, and has made that consent binding upon his administrator." 300 N.Y. at page 441, 91 N.E.2d at page 880. It would not be a

long step from this for the Court of Appeals to reason, despite the constitutional fears of McMaster v. Gould, supra, that if a non-resident enters New York and is personally served with process there, he likewise shall be deemed to have "consented" that his administrator should be subject to jurisdiction as the decedent was; and, as pointed out above, the words of § 84 of the Civil Practice Act are already adequate to that end.

A further ground of distinction is that the statements in Guaranty Trust Co. of New York v. York related to action by a Federal court in the absence of Federal legislation directed to the point. This was the situation also in Angel v. Bullington, 1947, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832, so far as relevant, in Woods v. Interstate Realty Co., 1949, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524, and as the Court read Fed.R.Civ.Proc. 23(b), in Cohen v. Beneficial Industrial Loan Corp., 1949, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528. Bernhardt v. Polygraphic Co. of America, 1956, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199, did concern a Federal statute, but the decision went only so far as to read the statute narrowly to avoid a constitutional issue, a solution which the history of Fed.R.Civ.Proc. 25(a) (1) makes unavailable here. Cf. Robert Lawrence Co. v. Devonshire Fabrics, supra. Of the decisions holding state to override Federal procedural law, only Ragan v. Merchants Transfer & Warehouse Co., 1949, 337 U.S. 530, 69 S.Ct. 1233, 1235, 93 L.Ed. 1520, seems in the same general area as the instant case; but there the Court was dealing with the express command of a state statute of limitations which "brought the cause of action to an end." The Court did not hold Fed.R.Civ.Proc. 3 to be invalid as prescribing a method for commencing a diversity suit in the Federal courts different from the state practice, but rather that the action taken under

3. Section 1836a of the Code of Civil Procedure was omitted from the Civil Practice Act, Laws 1920, ch. 925. The Legislature repealed § 160 of the Decedent Estate Law, Laws 1926, ch. 660, in the light of McMaster v. Gould, supra. However, by Laws 1951, ch. 522, the Legislature resurrected former § 160 to the extent of authorizing suits by foreign executors and administrators.

the Federal Rule, which was sufficient to start the suit, was not sufficient to toll a state statute of limitations that required more.

On the other hand, the Supreme Court has declined to direct a district court to apply a state procedural rule confiding decision to the judge alone, although "were 'outcome' the only consideration, a strong case might appear for saying that the federal court should follow the state practice." Byrd v. Blue Ridge Rural Electric Cooperative, 1958, 356 U.S. 525, 537, 78 S.Ct. 893, 900, 2 L.Ed.2d 953. It has held that the Article III grant of Federal judicial power in "all Cases of admiralty and maritime Jurisdiction" enables a Federal rule to overcome "procedural niceties" of a state with respect to the beginning of a suit by an administrator, Levinson v. Deupree, 1953, 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319. And, despite the careful reservation made in Deupree with respect to diversity cases, we find nothing in the language or history of the grant of Federal judicial power in the same Article III over controversies between "Citizens of different States," nothing in the early legislation applying that grant,[4] and no actual decision of the Supreme Court that would compel a conclusion that Congress lacks power to establish uniform rules of revivor for the Federal courts "in all suits of a civil nature" including those based on diversity of citizenship, even though this may result in a particular plaintiff or defendant obtaining better or worse treatment in the Federal than in the state court. We are dealing with a subject-matter which, though "outcome determinative" has long been regarded as procedural by lawyers, by legislators and by the Supreme Court itself, Baltimore & Ohio R. Co. v. Joy, supra. We believe revivor falls in what Judge Magruder called, although, to be sure, before Guaranty Trust Co. of New York v. York, "a twilight zone * * * where a rational classification could be made either way, and where Congress directly, or the Supreme Court under the authority of the Act of June 19, 1934, 48 Stat. 1064, 28 U.S.C.A. §§ 723b, 723c, would have power to prescribe a so-called rule of procedure for the federal courts." Sampson v. Channell, 1 Cir., 110 F.2d 754, 756–757, 128 A.L.R. 394, certiorari denied 1940, 310 U.S. 650, 60 S.Ct. 1099, 84 L.Ed. 1415. Our holding is only that in this limited area Congress may use its power to "provide for service of process anywhere in the United States" in such a manner that in all suits properly in the Federal courts by or against United States citizens, including diversity suits, substitution of their personal representatives may be had on their decease. This is an area where the positive inference from Article III and the "necessary and proper" clause outweighs the negative inference from the limited grant of legislative power in Article I, § 8, and the Tenth Amendment that must have afforded the basis for the constitutional precept of Erie.[5]

4. Both the 34th section of the Judiciary Act of 1789, 1 Stat. 92 and section 2 of the Process Act of 1789, 1 Stat. 93, which applied to all actions at law, including the large class where Federal jurisdiction rested on diversity of citizenship, excepted cases where acts of Congress "otherwise require or provide." On the best of grounds, the Supreme Court has recognized the first Judiciary Act to be "contemporaneous and weighty evidence of its [Article III's] true meaning." State of Wisconsin v. Pelican Ins. Co., 1888, 127 U.S. 265, 297, 8 S.Ct. 1370, 1378, 32 L.Ed. 239. See Warren, New Light on the History of the Federal Judiciary Act of 1789, 37 Harv.L.Rev. 49 (1923).

5. For whatever importance it may have, it would seem highly unlikely that differences in Federal and state rules as to revivor would lead to the kind of forum-shopping of which Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab Co., 1928, 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681, cited by Mr. Justice Brandeis in Erie, 304 U.S. at page 73, 58 S.Ct. at page 819, 82 L.Ed. 1188, was so outrageous an example and which is likely also to occur where statutes of limitations are concerned, as in Guaranty Trust Co. of New York v. York.

## IV.

*Plaintiffs are not precluded from effecting substitution under F.R.Civ.Proc. 25(a) (1) because of their failure to act within the two-year time limit there provided.*

If we are right in what has been said up to this point, an order substituting Waterson's administratrix here would have been proper, despite the contrary practice in the New York courts, if substitution had been effected within the two-year period prescribed by F.R.Civ. Proc. 25(a) (1). However, this was not done, for reasons stated at the outset. The District Court overcame this by holding, on the authority of Perry v. Allen, 5 Cir., 1956, 239 F.2d 107,[6] that as a result of the 1948 repeal of 28 U.S.C. § 778 the two-year limitation in Rule 25 (a) (1) was no longer valid since it abridges a substantive right and thus offends the Enabling Act.[7]

■ (1) For reasons indicated above, we are not inclined to give significance to the repeal of 28 U.S.C. § 778 by the Revision Act. Moreover, with all respect to the judges of the Fifth Circuit, we find no sufficient reason for a view that although the substitution of the personal representative of a decedent is a matter of procedure within the Enabling Act, the placing of a time limit upon this is not. The courts of Colorado and Delaware have held that court-prescribed rules similar to Rule 25(a) (1) placing a two-year limit upon the substitution of the personal representative of a decedent concern procedure and are within the rule-making power. Film Enterprises v. Selected Pictures, 1957, 134 Colo. 451, 306 P.2d 252; Tiffany v. O'Toole Realty Co., Del.Super.Ct.1959, 153 A.2d 195. Moreover, whatever might be held where revivor was sought after two years against the personal representatives of a resident decedent in the district court of a state allowing a longer period, we can see no basis for holding in this case that the application of a time limit in the very Federal Rule that alone permits the substitution of a foreign personal representative could deprive plaintiffs of any rights. In our view, therefore, the order of substitution can be sustained only if plaintiffs may be treated as if they had met the two-year limitation because a court will not allow defendant to claim the contrary.

■ (2) There are weighty indications that no consideration can ever be given to estoppel where there has been failure to comply with the two-year limitation of Fed.R.Civ.Proc. 25(a). These begin with Anderson v. Yungkau, 1947, 329 U.S. 482, 67 S.Ct. 428, 429, 91 L.Ed. 436, which held that Fed.R.Civ.Proc. 6 (b), permitting the court to allow an "act to be done after the expiration of the specified period where the failure to act was the result of excusable neglect," did not apply to Fed.R.Civ.Proc. 25(a) (1) and therefore forbade substitution after the two-year period although it was stipulated that plaintiff had not been lacking in diligence. Next is the amendment of F.R. 6(b) on December 27, 1946, adding Rule 25 as a rule specifically excepted from its operation, in the face of a recommendation from the Advisory Committee that the courts should have

---

**6.** This decision relied heavily on the views expressed by Professor Moore, 4 Federal Practice, ¶25.06, at 522–23.

**7.** The District Courts in this circuit have divided as to the continued validity of the two-year limitation in Fed.R.Civ.Proc. 25 (a) (1). Judge Noonan in the instant case and Judge Bruchhausen in Henebry v. Sims, D.C.E.D.N.Y.1958, 22 F.R.D. 10, have followed Perry v. Allen. Judge Weinfeld in Foltz v. Moore-McCormack Lines, Inc., 19 F.R.D. 301, D.C.S.D.N.Y. 1956, and Judge Herlands in Gertler v. United States, D.C.S.D.N.Y.1955, 18 F.R.D. 307, have rejected it. The decisions by Judges Bruchhausen, Weinfeld and Herlands did not involve revivor against foreign personal representatives. We do not read the footnote in Vibra Brush Corporation v. Schaffer, 2 Cir., 1958, 256 F.2d 681, 683–684, as intimating either agreement or disagreement with Perry v. Allen by this Court. Well-reasoned law review comments have criticized Perry v. Allen. 45 Cal.L.Rev. 785; 70 Harv.L.Rev. 1471; 105 U.Pa.L.Rev. 1098; 43 Va.L.Rev. 431.

power to extend the two-year period of Rule 25(a) (1) on a showing of reasonable excuse. 4 Moore, Federal Practice, ¶25.01 [3], 504–05. There is also the Supreme Court's failure to adopt the recommendation of the Advisory Committee in its report of October 1955 for the deletion of the two-year provision of Rule 25(a) (1) in favor of a rule that the action might be dismissed as to a deceased party if substitution were not made within a reasonable time. Most important of all is the statement, in Snyder v. Buck, 1950, 340 U.S. 15, 19, 71 S.Ct. 93, 96, 95 L.Ed. 15, that the six months' time limit for substitution prescribed by 43 Stat. 936, 941, the statutory predecessor of Fed.R.Civ.Proc. 25(d), relating to continuation of suits against public officers "was a declared policy of Congress not to be altered by agreement of the parties or by some theory of estoppel." See Poindexter v. Folsom, 3 Cir., 1957, 242 F.2d 516, applying this to Rule 25(d).

Impressive as these indications are, there are substantial points of distinction. In Anderson the Supreme Court was concerned with excusable neglect, not with estoppel. The 1946 amendment of Rule 6(b) and the rejected amendment of Rule 25(a) (1) were before the Court while Anderson was pending; the former simply codified the forthcoming decision in Anderson and the latter would have gone far beyond estoppel. The non-adoption of the Advisors' 1955 recommendation shows at most that the Supreme Court preferred a specific to an indefinite time limit. Snyder v. Buck arose under § 11 of the Judiciary Act of 1925, 43 Stat. 936, 941, relating to the continuation of suits concerning the discharge of official duties of an officer of the United States after he had ceased to hold office. As the Court pointed out (340 U.S. at page 18, 71 S.Ct. at page 95), such suits relate only "to a duty attaching to

the office" which "existed * * * only so long as the office was held," and as to which the successor might well take a different view. For many years it had been held that such actions abated when the official died or retired, and the Act of 1925 was less liberal in preserving them than the previous Act of 1899, 30 Stat. 822. Moreover, the only penalty for failure to make timely substitution is the need for starting a new action if, in fact, the successor continues the conduct complained of; service of process in a new suit against a government officer is never a problem.

Despite these distinctions, we would nevertheless feel constrained to follow the indications thus summarized if there were not also authority to the contrary. In Bush v. Remington Rand, Inc., 2 Cir., 1954, 213 F.2d 456, 463–465, relying on the analogy that a statute of limitations can be waived, we held that long continued litigation with knowledge of plaintiff's death estopped a defendant from taking advantage of the two-year limitation of F.R. 25(a) (1), although counsel of distinction pressed upon us—and upon the Supreme Court in a petition for certiorari, denied in 1954, 348 U.S. 861, 75 S.Ct. 85, 99 L.Ed. 679—that this was in direct conflict with Anderson v. Yungkau and Snyder v. Buck. And the principle that estoppel may prevent a defendant from invoking even a most strongly worded limitation received authoritative affirmation when the Supreme Court, at the last term, estopped a defendant from invoking the direction of § 6 of the Federal Employers' Liability Act, 45 U.S.C. A. § 56, that "no action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued," Glus v. Brooklyn Eastern District Terminal, 1959, 359 U.S. 231, 79 S.Ct. 760, 761, 3 L. Ed.2d 770.[8] The Court based its deci-

---

**3.** The Courts of Appeals had divided on this question. In addition to our own decision in Glus, 2 Cir., 253 F.2d 957, which the Supreme Court reversed, the Third Circuit had held that the three-year period of 45 U.S.C.A. § 56 could not

be tolled even by fraud or concealment. Damiano v. Pennsylvania R., 3 Cir., 161 F.2d 534, certiorari denied 1947, 332 U.S. 762, 68 S.Ct. 65, 92 L.Ed. 348. The Fourth Circuit had held the contrary. Scarborough v. Atlantic Coast Line R. Co.,

sion on "the maxim that no man may take advantage of his own wrong," a principle "deeply rooted in our jurisprudence" which "has frequently been employed to bar inequitable reliance on statutes of limitations." Id., 359 U.S. at pages 232–333, 79 S.Ct. at page 762. If there be differences in the degree of the imperative in 45 U.S.C.A. § 56 and in Rule 25(a) (1), our microscope is not powerful enough to perceive them. Finding the authorities thus inconclusive and believing our decision in Bush v. Remington Rand to be sound in principle, we adhere to it.

■■■ (3) The final problem is whether this is a proper case for estoppel. Appellant points out that in Bush the estoppel was applied against the live party whereas here it is invoked against the dead one, and relies on the general rule that an agent's authority is revoked by the principal's death. While we recognize the distinction, we do not think it calls for a difference in result. We need not go so far as to hold that an attorney appearing in the courts of this Circuit is under a duty to keep himself and his adversary informed of his continued authority at all times. We do hold that an attorney so appearing must assure himself of the continued existence of his client before he takes affirmative steps in the client's behalf; that, in the absence of knowledge to the contrary, his adversary may properly assume he has done this; that a client who authorizes an attorney to represent him has impliedly so informed the adverse party; and that no advantage may be taken by the client's personal representative of the attorney's failure to ascertain the fact of the client's death. The Supreme Court of Pennsylvania has so held. It said in In re Hoopes' Estate, 1898, 185 Pa. 167, 39 A. 840, 841, that "No advantage can be taken of the failure to suggest death and have substitution made." And it has reaffirmed this in In re Stewart's Estate, 1948, 358 Pa. 434, 58 A.2d 42, in an opinion by Mr. (now Chief) Justice Jones. Compare Williams v. United States, 6 Cir., 1959, 264 F.2d 227 and Pfeffer v. Commissioner, 2 Cir., 272 F.2d 383. Hart v. Blabey, 1941, 286 N.Y. 75, 35 N.E.2d 657, is not to the contrary, since there the proceedings subsequent to death had not created any prejudice. We recognize there are grounds on which the Pennsylvania decisions could be distinguished but, in the absence of controlling authority to the contrary, we prefer to follow them. We do this the more readily since the general law of agency appears to be moving in this direction (compare Restatement of Agency § 120 (1933) with Restatement of Agency 2d § 120 & comment (1958); see also Wis.Stat. § 243.06 (1955)), and since there is much to suggest that the attorney who appeared for the decedent was in fact retained by and is representing someone very much alive.[9]

Order affirmed.

4 Cir., 1949, 178 F.2d 253, 115 A.L.R.2d 491, certiorari denied 1950, 339 U.S. 919, 70 S.Ct. 621, 94 L.Ed. 1343.

9. Appellees' brief states (p. 9), "It does not require much thought to realize that Waterson must have been the beneficiary of a liability insurance policy with an insurance company represented by John E. Morris." Appellant's reply brief makes no comment save to state that Morris and Waterson were "not on terms of social contact or acquaintance" (p. 5). The provisions of 39 N.J.Stat. 6–20 as to compulsory provisions in certain motor vehicle liability policies for direct action by a judgment creditor against an insurer, along with the fact that Waterson seems not to have had enough assets to warrant general administration in New Jersey, may afford a clue to this not very deep mystery.