[Civ. No. 35961. Second Dist., Div. Five. July 1, 1970.]

SIDNEY FACTOR, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent; GRACE W. FARNELL, as Executrix, etc.,
Real Party in Interest.

## COUNSEL

Low & Stone, Lawrin S. Lewin and Joseph Stone for Petitioner.

No appearance for Respondent.

Russell & Schureman and Robert W. Hancock for Real Party in Interest.

## OPINION

**SELBER, J.**[*]—Petitioner herein is the plaintiff in an action for damages commenced in 1966. Harold S. Farnell, aka Jack Farnell, is named as one of several defendants in that action. Said defendant died during the pendency of this action. His wife, Grace W. Farnell was the executrix under his will, and she is named herein as the real party in interest. For convenience the petitioner will hereafter be referred to as plaintiff, the decedent as defendant, and the real party in interest as defendant's executrix.

The complaint alleges that plaintiff owned a valuable racehorse and had arranged through defendants to have it transported from Los Angeles to New York via air freight; that as a result of the negligence of the defendants in loading the horse onto the plane, the horse was permitted to fall into a hole between the loading ramp and the plane. Plaintiff's suit prayed for damages in the amount of $175,000 against the defendants, individually, contending that each of these parties was in some way responsible for the injury to the animal. Defendant's insurance carrier undertook the repre-

---

[*]Assigned by the Chairman of the Judicial Council.

sentation of defendant and has continued to represent him throughout the proceedings.

On May 16, 1969, a pretrial conference was held at which counsel for the carrier was present on behalf of defendant. The joint pretrial statement specifically retained defendant as a party to the action. A trial date was set for October 14, 1969.

Later that same day a deposition was taken in connection with the matter. Again counsel for the carrier appeared for defendant.

On October 9, 1969, five days prior to trial, plaintiff's counsel called counsel for each of the defendants to determine if it would be necessary to subpoena their clients or whether they would appear voluntarily at the trial. It was in his call to defendant's counsel that attorney for plaintiff first learned of defendant's death. Defendant's counsel had learned of his client's death about August 1969 and had neglected to notify plaintiff's counsel at that time.

Attorney for plaintiff then examined the court records and discovered that defendant had died on December 30, 1968. His widow and sole heir was named executrix under his will, which was admitted to probate on January 31, 1969. First publication of notice to creditors was on February 4, 1969. An ex parte order authorizing the sale of the estate's major asset to a person who is a named codefendant in the civil action was approved on June 3, 1969. On July 31, 1969, the executrix filed a waiver of accounting and petition for distribution. On August 19, 1969, the petition was granted and she filed a receipt for the assets on August 20, 1969. This, then, was the state of the record at the time plaintiff's counsel allegedly first learned of the death of defendant.

On October 14, 1969, the trial date, all parties appeared through their counsel in department I of the superior court. The above facts were explained to the judge who thereupon continued the trial to March 30, 1970. Counsel for defendant refused to stipulate to the substitution of the executrix in place of her deceased husband.

All of the above facts appear to be without dispute. There is some dispute over the alleged representation claimed by plaintiff's counsel that counsel for the carrier, who is also counsel for defendant, told him for the first time on October 14, 1969, that the insurance coverage was not $200,000 but rather only $5,000. Carrier's counsel denied that he ever said the coverage was $200,000.

In any event, plaintiff's attorney alleges that when he thus first learned of the low coverage, it became clear to him that the assets of the estate

would be necessary to satisfy any possible judgment against defendant. He thus prepared various motions, checked the probate register on November 20, 1969 and determined there had been no subsequent activity to that set forth above. He thereupon filed said motions. They will be referred to shortly hereafter. It appears that on November 18, 1969 the executrix had in fact been discharged from such representative capacity. However, the entry of such discharge, did not show until after the motions filed by plaintiff were filed and entered. These motions are as follows:

In the civil action:

1. For order of substitution

2. To vacate pretrial order

3. To issue new summons

In the probate action:

1. To vacate the order of final distribution, Code of Civil Procedure section 473.

2. To strike the filing of waiver of accounting, report of executrix and petition to pay statutory attorney's fees and for final distribution.

3. To vacate the ex parte order authorizing sale of securities.

4. To vacate the final discharge of the executrix.

5. To secure authority to file a claim after the expiration of the filing period, Probate Code section 709.

Thereafter all motions, both probate and civil, were consolidated and assigned for hearing to a single department of the superior court. At the hearing held December 17, 1969, appearance was made by plaintiff and defendant, through their counsel, and a special appearance was made by defendant's executrix, through her counsel, solely for the purpose of challenging the jurisdiction of the court. A transcript of the hearing has been furnished to this court and is attached as Exhibit "E" to the petition. All motions were denied by the court.

This petition for writ of mandate seeks from this court all of the relief requested by way of the above enumerated motions. In the alternative, it asks that the respondent superior court be commanded to hear the various motions on their merits.

██  It is the contention of plaintiff that the court denied the motions upon lack of jurisdiction and not upon the merits; that the court did have jurisdiction to entertain such motions under section 473 of the Code of

Civil Procedure; that the facts set forth in the supporting declarations were sufficient to establish grounds of mistake, inadvertence or excusable neglect; that plaintiff was misled by decedent's attorneys when they continued to represent decedent more than four months after he died without divulging the fact of his death to the plaintiff; that if he had known of the fact of death when it occurred he would have filed his timely claim in the then pending estate; that the constructive notice involved in the publication of notice to creditors should not be applicable to plaintiff where in effect he was being given notice of the defendant being alive through his continued representation by his counsel; that consequently the court should restore plaintiff to whatever his position would have been but for the conduct of defendant's attorneys; and that this may only be accomplished by the granting of the motions filed by plaintiff.

Defendant's executrix takes the position that the court did entertain the motions and denied them upon their merits for the reason that the grounds stated constituted an insufficient showing under section 473, Code of Civil Procedure; that in any event the plaintiff would have to vacate the order for final distribution to accomplish his major objective under his series of motions and this cannot be done where an estate which was regular in all respects, has been closed; that finally, a late claim cannot be filed under section 709, Probate Code, once a final distribution has been ordered and affected.

Plaintiff's major contention is that the respondent court denied all of the motions based upon its belief that it lacked jurisdiction to act.

At the hearing held on December 17, 1969, the following colloquy took place between the court and counsel for the plaintiff:[1]

"THE COURT: In the probate matter, all of the motions will be denied.

"That brings us now to the other matter. That is the motion for substitution, motion to vacate pretrial order, and motion to issue a new summons.

"What do you want to say to that?

"MR. STONE: Well, your Honor, the remarks which I made covered both motions.

"Could I ask for a moment, your Honor, if I may, with reference to the ruling which you have just made. Is that based upon the jurisdictional or—

"THE COURT: Well, the estate is closed and the executrix is discharged.

[1]Reporter's transcript of the hearing, Exhibit "E" attached to the petition, page 19, line 15 to page 20, line 8.

"MR. STONE: Is your Honor ruling that on the issue of jurisdiction as raised by the—

"THE COURT: That is correct. That is correct.

"There is no showing of any inadvertence of any kind that would come under the Baird case and I think the Baird case is controlling as far as motions of this type are concerned."

Thereafter the remaining motions were submitted and also denied.

Plaintiff obviously interprets this somewhat ambiguous statement by the court as a refusal by the court to entertain the motions solely for the reason of lack of jurisdiction in the sense of power to act. We disagree.

In *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, at page 288 [109 P.2d 942, 132 A.L.R. 715], the court stated as follows:

"Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties. [Citations.] . . . . But in its ordinary usage the phrase 'lack of jurisdiction' is not limited to these fundamental situations . . . it may be applied to a case where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisittes."

In *Fortenbury* v. *Superior Court* (1940) 16 Cal.2d 405, at page 407 [106 P.2d 411] the court held:

"The term jurisdiction originally included only the right to hear and determine concerning the subject matter in a particular case. But the modern tendency has been to broaden that meaning, particularly where the right to review a decision by *certiorari* or other prerogative writ is the question for decision."

It is true that the court did make the statement that the denial was based upon lack of jurisdiction; however in setting forth its reasons immediately thereafter, the court referred, we feel, to jurisdiction not in the narrow sense of its power to hear the motions but rather in the broader meaning of the word, i.e., that the grounds urged by plaintiff in support of his motions were insufficient to empower the court to grant the relief requested. It is abundantly clear from the record in this case that the court knew it had the power to set aside the prior orders of the superior court under section 473 of the Code of Civil Procedure. Assuming that this well known proposition of the law had not been known to the court prior to the commencement of

this proceeding the moving papers, points and authorities and oral arguments presented to the court laid specific stress thereon and the court's statement of its reasons for denying the motion is clear indication of its awareness.[2] We therefore conclude that the court's denial of plaintiff's motions was upon the merits of those motions and not solely by reason of lack of jurisdiction.

Plaintiff next asserts that the respondent court abused its discretion in denying the motions. ■ However, motions under section 473 of the Code of Civil Procedure are addressed to the broad discretion of the court, and its rulings on whether to grant or deny relief from judgments or orders taken by mistake, inadvertence, surprise or excusable neglect will not be disturbed upon review unless abuse of discretion clearly appears. (*Freeman v. Goldberg* (1961) 55 Cal.2d 622 [12 Cal.Rptr. 668, 361 P.2d 244].) ■ Each motion filed by the plaintiff is supported by declarations and points and authorities and fully sets forth the grounds of plaintiff under section 473 of the Code of Civil Procedure and particularly the ground most heavily relied upon by plaintiff, to wit, that plaintiff was misled by the conduct of defendant's counsel in continuing to represent the defendant long after that party had died. We do not find that the court abused its discretion in denying the motions.

The main thrust of the entire series of plaintiff's motions was to provide a fund from which plaintiff might recover in the event he should obtain a judgment against defendant in the damage action in excess of the insurance coverage of that defendant. In order to accomplish this result plaintiff must first have filed a claim for the amount in excess of or not covered by such insurance in the probate proceeding under section 709 of the Probate Code.[3]

---

[2]It is argued by plaintiff that defendant, in citing *Estate of Baird* (1919) 181 Cal. 742 [186 P. 351], to the court, omitted to include the dictum reference made therein to the court's power to set aside prior orders of the probate court under section 473 of the Code of Civil Procedure. However, plaintiff, in his moving papers and oral argument included the full citation and thereby corrected the deficiency. We disagree with the court's statement that *Estate of Baird* is necessarily controlling in this case. *Estate of Baird* was a case on appeal and did not involve a motion made under section 473 of the Code of Civil Procedure. However, insofar as *Estate of Baird* is authority for the proposition that a court in probate loses jurisdiction of property of an estate upon the making of a decree of distribution thereof the court's reliance thereon was certainly correct.

[3]Section 709 of the Probate Code reads as follows: "If an action is pending against the decedent at the time of his death, the plaintiff must in like manner file his claim with the clerk or present it to the executor or administrator for allowance or rejection, authenticated as required in other cases; and no recovery shall be had against decedent's estate in the action unless proof is made of such filing or presentation; provided, if the action which is pending is an action for damages and the decedent was insured therefor and the insurer has accepted the defense of the cause and an appearance has been made in such action on behalf of the decedent, no claim shall be required except

■ While that section does permit a claim to be filed late under certain enumerated circumstances, it may not be filed after a petition for final distribution has been filed, nor can the claim affect that property which has already been distributed in the estate prior to notice of such petition for late filing. In this case plaintiff's claim was filed after the final distribution had been ordered by the probate court and after the property so ordered distributed had been receipted for by the distributee.

However, plaintiff has also moved to vacate the petition for final distribution as well as the order for final distribution. If this motion were granted it would result in the reopening of the estate, and the setting aside of the final distribution as well as the discharge of the executrix. Under such circumstances, plaintiff would then be enabled to request the probate court to surcharge the executrix or aguably to compel the executrix to reimburse the estate in the amount distributed to her. As she is the sole distributee under the estate the full estate might then be fully restored and plaintiff could then petition the court for authority to file his late claim under section 709 of the Probate Code.

■ An order for final distribution is an appealable order under section 1240 of the Probate Code. This being the case we would ordinarily hold that that is an adequate remedy to be pursued by plaintiff and that relief pursuant to a petition for writ of mandate will not be granted. However, in view of plaintiff's contention that he did not make a timely appearance by the filing of a claim in the probate proceeding because he was misled by the conduct of opposing counsel and thereby precluded from so doing, we will assume that plaintiff has not filed a timely appeal from the order for final distribution for the same reason.

for amounts in excess of or not covered by such insurance; provided, further, if any action is pending against the decedent at the time of his death and a claim based on such action is not filed or presented within the prescribed period, the court may thereafter allow filing of said claim on such terms as may be just and equitable, upon the claimant's verified petition and notice of hearing given pursuant to Section 1200, if it finds that the claim was not filed or presented previously because neither the claimant nor his attorney had actual knowledge of the decedent's death at least 15 days prior to the expiration of the prescribed period for filing or presenting the claim, but any property distributed or payment made under court order before notice of such petition shall not be subject to the claim.

"No relief shall be granted unless the petition is filed within a reasonable time after discovery of decedent's death and in any event within one year after the expiration of said prescribed period, and before petition for final distribution has been filed.

"If, at the time of filing the petition hereunder, assets of the estate have been paid to general creditors or some thereof or have been distributed by decree of preliminary distribution to heirs, devisees or legatees (in either case after expiration of the prescribed time for claims), and it appears that the filing and later establishment of the claim, in the circumstances, would cause or tend to cause unequal treatment between heirs, devisees, legatees or creditors, then permission to file the claim shall be denied. (Amend. Stats. 1959, ch. 1815, § 1; Stats. 1965, ch. 1593, § 2; Stats. 1969, ch. 431, § 1.)"

Plaintiff has raised the issue of extrinsic fraud for the first time before this court, and for this reason we decline consideration of that issue. (*Gardena Valley Airport, Inc.* v. *All American Sports Enterprises, Inc.* (1964) 230 Cal.App.2d 478, 484 [41 Cal.Rptr. 93].) Counsel for defendant asserts that his first knowledge of his client's death was approximately two months prior to the trial date which would be subsequent to the filing of the petition for final distribution. The truth of this assertion is not disputed by plaintiff. There is no showing made by plaintiff of fraudulent conduct by defendant's executrix. The counsel in the probate proceeding were not the same counsel as those representing defendant herein.

Notice to creditors published in the probate proceedings was constructive notice of the pendency of the estate to the entire world, which incidentally includes plaintiff's counsel as well as defendant's counsel.

However, plaintiff argues that an attorney who represents a client stands in a special relationship which continues after the death of his client. Plaintiff places major reliance for this contention upon the case of *Iovino* v. *Waterson* (2d Cir. 1959) 274 F.2d 41, followed in *Simmons* v. *King* (4th Cir. 1964) 333 F.2d 178. In *Iovino,* at page 51, the court states as follows:

"We need not go so far as to hold that an attorney appearing in the courts of this Circuit is under a duty to keep himself and his adversary informed of his continued authority at all times. We do hold that an attorney so appearing must assure himself of the continued existence of his client before he takes affirmative steps in the client's behalf; that, in the absence of knowledge to the contrary, his adversary may properly assume he has done this; that a client who authorizes an attorney to represent him has impliedly so informed the adverse party; and that no advantage may be taken by the client's personal representative of the attorney's failure to ascertain the fact of the client's death." Both *Iovino* and *Simmons* dealt with the application of rule 25(a)(1) of the Federal Rules of Civil Procedure (as said rule then read) pertaining to the substitution of a personal representative of a deceased defendant into the action within two years after the date of death. In each of these cases counsel continued to represent the defendant after his death, and under such circumstances the court in both matters held that the personal representative was estopped from asserting rule 25(a)(1) to preclude the substitution of a personal representative after the two-year period. Of course these cases have nothing to do with the statutory scheme established by the California Legislature for the orderly presentation of claims against a decedent's estate. Each said case dealt with an order made by the court in the tort action and neither involved the vacating of final orders made by another court, as here. Each of the

cases was specifically decided upon the basis of estoppel, which is not a ground urged by plaintiff herein in support of his motion to vacate the probate orders in the superior court.[4] In the *Iovino* case the court distinguished an earlier case in which a substitution was not allowed after the two year period under rule 25(a)(1). (*Anderson* v. *Yungkau* (1947) 329 U.S. 482 [91 L.Ed. 436, 67 S.Ct. 428, 429].) In so doing, the court in *Iovino,* at page 50 stated: "In *Anderson* the Supreme Court was concerned with excusable neglect, not with estoppel." It should be noted also that in *Anderson* there was a stipulation that plaintiff had not been lacking in diligence.

Further, the *Iovino* case involved the substitution as personal representative in the tort action of an administratrix who had not been discharged. In the present case, of course, the executrix had been discharged. It is true that in the *Simmons* case the administratrix had also been discharged at the time of the application for her substitution, but in that case she was held to have waived her right not to be substituted by the fact that she made no objection to the application until the day of trial which was 10 months after the substitution had first been proposed.

Finally in *Iovino,* the court notes in a footnote at page 51 that "Waterson seems not to have had enough assets to warrant general administration. . ." It thus appears that a full probate proceeding, sufficient to constitute notice to all, was not necessary.

*Iovino* and *Simmons* are thus clearly distinguishable and inapplicable to the facts of the instant case.

In view of our indicated ruling in this matter it is not necessary that we consider further objections made by defendant to the granting of this petition, except to note that they appear to raise additional formidable hurdles to the granting of the relief requested by plaintiff. These include the question of whether plaintiff herein is one against whom an order, judgment or proceeding has been taken under section 473, Code of Civil Procedure;[5]

---

[4]At page 10, line 7 of the transcript of the hearing, Exhibit "E" to the petition, there is an allusion to the court's power to create an estoppel; however. the notice of motion regarding the probate matters states clearly that the motion is made under section 473 of the Code of Civil Procedure. (Exhibit "B" to the petition.)

[5]See *Estate of Middleton* (1963) 215 Cal.App.2d 324 [30 Cal.Rptr. 155].

and the standing of plaintiff as one interested in the estate to set aside an order of final distribution.

The alternative writ is discharged. The petition for peremptory writ of mandate is denied.

Stephens, Acting P. J., and Reppy, J., concurred.

A petition for a rehearing was denied July 17, 1970, and petitioner's application for a hearing by the Supreme Court was denied August 26, 1970.